673 F.2d 296
 UNITED STATES of America, Plaintiff-Appellee,
v.
James Orlando QUINTANA, Defendant-Appellant.
 Nos. 80-2042, 80-2320.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Nov. 16, 1981.
Decided Feb. 18, 1982.
 
 Brian G. McConaty, Asst. U.S. Atty., Denver, Colo. (Joseph Dolan, U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.
 Normando R. Pacheco, Denver, Colo., for defendant-appellant.
 Before SETH, Chief Judge, McWILLIAMS, Circuit Judge, and PECK, Senior Circuit Judge*.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 In these consolidated cases, James Quintana appeals, first, from the district court's refusal to dismiss the indictment against him, and second from a judgment of conviction following a jury trial. Quintana argues on appeal that the district court exceeded its statutory authority or abused its discretion in sentencing him. He also sees reversible error in several of the district court's pretrial and evidentiary rulings.
 
 
 2
 The first sentencing issue is whether the trial judge imposed a special parole term without statutory authority. To follow this argument, it is necessary to align the charges, convictions and sentences. Quintana was charged with one count of conspiracy to distribute heroin (Count I, 21 U.S.C. § 846(a)(1)), and with three counts of distributing heroin (Counts II-IV, 21 U.S.C. § 841, 18 U.S.C. § 2). The jury found Quintana guilty on all counts but the second. The trial judge imposed the following sentences, all concurrent:
 
 
 3
 Count I 15 years imprisonment
 (Conspiracy)
Count III 15 years imprisonment k
 (Distribution) 15 years special parole
Count IV 15 years imprisonment k
 (Distribution) 15 years special parole k
 $25,000 fine
 
 
 4
 Quintana argues that the special parole terms are unlawful under Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Bifulco held that 21 U.S.C. § 846,[1] the conspiracy statute pertinent here, does not authorize the imposition of a special parole term, even if special parole is among the sanctions authorized for the target offense of the conspiracy. Id. at 447 U.S. 387-401, 100 S.Ct. at 2252-2259.
 
 
 5
 The trial court would have erred had it imposed a special parole term as part of the sentence under Count I. It did not, but rather imposed special parole only for the violations of 21 U.S.C. § 841(a)(1) charged in Counts III and IV. Under this section special parole is not only an allowable sentence, but a mandatory one for distribution of heroin. See 21 U.S.C. §§ 841(b)(1)(A), 812(c).
 
 
 6
 Quintana's next contention is that the district court abused its discretion in sentencing Quintana to prison terms three times longer than those imposed on separately tried coconspirators. In sentencing Quintana, the district court noted that the testimony showed that Quintana was "somewhat of a central figure in the distribution of drugs" who had been found guilty on three counts in a case involving substantial amounts of drugs.[2] Neither Quintana nor his trial counsel chose to make any statement explaining or mitigating Quintana's crimes. Quintana had prior convictions in state court. There was no abuse of discretion in sentencing Quintana.
 
 
 7
 Quintana next argues that the district court should have imposed the sanction of dismissal of the indictment or of suppression of evidence because of the government's loss of eight audio tapes produced during the investigation of the Quintana conspiracy. The whereabouts of these tapes was last known in 1977, when they were introduced into evidence at the trial of one of Quintana's coconspirators. The disappearance of the tapes, which recorded conversations between coconspirators (including Quintana) and a government undercover agent, was a subject of a pretrial hearing, following which the district court found that no government bad faith or even negligence caused the loss of this evidence. The trial court further found that an accurate transcript of the tapes was available from the record of the earlier trial, and that in that earlier trial no objections were raised to the accuracy of the transcript itself or to translations of Spanish words on the tapes. Government agents testified "without refutation" at the pretrial hearing in the present case that their transcriptions of the tapes were accurate. Quintana produced no contrary evidence, even though persons with knowledge of the conversations recorded on the tapes were available to the defense.
 
 
 8
 In arguing the necessity of dismissing his case or suppressing the transcripts of the tapes, Quintana relies chiefly on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and cases following it. Brady held that due process precluded the government's suppression of evidence requested by defendants in discovery, "where the evidence is material either to guilt or punishment...." Id. 373 U.S. at 87, 83 S.Ct. at 1196. Under Brady, the good or bad faith of government agents is irrelevant. Id. Cases after Brady, however, have distinguished the "suppression" and "loss" of evidence, and in cases of loss have applied a "pragmatic balancing test" to decide whether sanctions should be imposed on the government for losing evidence. See, e.g., United States v. Grammatikos, 633 F.2d 1013, 1019-22 (2d Cir. 1980); United States v. Arra, 630 F.2d 836, 849 (1st Cir. 1980); United States v. Rose, 590 F.2d 232, 237 (7th Cir. 1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); United States v. Miranda, 526 F.2d 1319, 1327-28 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).
 
 
 9
 Under this balancing test, the prejudice to defendants from loss of evidence, and the government's culpability in losing it, are weighed against the government's interests in prosecuting crime. Here the trial court found that the government was not at all culpable in losing the tapes. The prejudice to Quintana from that loss is to an extent unknowable: Quintana argues that portions of the taped conversations transcribed as "inaudible" might have been technically enhanced to yield exculpatory statements by him. The tapes are gone. There is no way of testing Quintana's assertions.
 
 
 10
 There is, on the other hand, no evidence that government agents selectively transcribed the tapes. Some disclaimers by Quintana of any part of heroin trade are in the transcriptions. Moreover, even though some of the conversations on the missing audio tapes were also recorded on video tapes available to the defendant, he did not point out to the district court any flaws in the transcription of these conversations. At least in those cases where no government culpability has been established, a defendant must show a greater likelihood of prejudice from the loss of evidence than Quintana has done, if sanctions against the government are to be invoked successfully. See Arra, supra, 630 F.2d at 849, and cases cited there. There was no reversible error in the district court's refusal to dismiss the indictment of Quintana, nor in its refusal to suppress the transcript of the missing tapes.
 
 
 11
 We have carefully considered Quintana's other arguments and references and hold that he has not established any abuse of discretion by the district court. That court's judgment is therefore affirmed.
 
 
 
 *
 Of the United States Court of Appeals, Sixth Circuit, sitting by designation
 
 
 [1]
 This section provides:
 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy. 21 U.S.C. § 846 (emphasis added).
 
 
 [2]
 There was testimony at trial of discussions of the sale of pounds of heroin