UNITED STATES of America, Appellee,

v.

Alfred D. KINCAID, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Albert J. GREENE, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Kelley TWOMEY, Defendant, Appellant.

Nos. 82–1925, 83–1008 and 83–1025.

United States Court of Appeals,
First Circuit.

Argued May 2, 1983.

Decided July 21, 1983.

John Kenneth Zwerling, Alexandria, Va., with whom Michael S. Lieberman, and Zwerling & Associates, Alexandria, Va., were on brief, for Alfred D. Kincaid.

Marvin D. Miller, Alexandria, Va., for Albert J. Greene.

Ronald Chisholm, Boston, Mass., on brief, for Kelly Twomey.

William F. Weld, U.S. Atty., Boston, Mass., with whom John C. Doherty, Asst. U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and RE,* Chief Judge.

BREYER, Circuit Judge.

Appellants were convicted of conspiracy to import marijuana. Their conviction rests, in large part, upon evidence seized by the Coast Guard from the British-registered ship *Persistence* while that ship was sailing on the high seas. Before their trial, the appellants (who are all American citizens) moved to suppress that evidence. In their view, the search violated Article 6 of the Convention on the High Seas, *opened for signature* April 28, 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200 (entered into force Sept. 30, 1962), which prohibits unauthorized interference with a foreign vessel on the high seas; it lacked statutory authorization; and, in any event, it was unreasonable, and therefore unlawful under the Fourth Amendment. They convinced the district court, but on interlocutory appeal, 18 U.S.C. § 3731, this court rejected their arguments and held the search proper. *United States v. Green*, 671 F.2d 46 (1st Cir.1982). They now raise an argument which, though different in form, embodies some of these past claims: They state that the government's destruction of certain evidence—Coast Guard tapes that monitored communications between the seizing vessel and the land-based command station—deprived them of an opportunity to show that the search was unlawful, and thereby deprived them of a fair trial. Under these circumstances, they argue, the proper sanction against the government is dismissal of the indictment. *See, e.g., United States v. Bryant,* 439 F.2d 642 (D.C.Cir.1971). In addition, they argue that the defense should have been permitted to issue letters rogatory to certain British officials, and that *Green* should be reexamined in light of *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). We reject these contentions.

While it is cold comfort to defendants, we agree with them that the government's conduct with respect to the tapes presents a dismal story. The defense attorneys, knowing that it was standard Coast Guard practice to record, and to keep for thirty days, all radio communications between the command station and Coast Guard vessels, sent the government within three weeks of the search two written requests and a follow-up request to preserve the relevant Coast Guard tapes. The U.S. Attorney received those letters. The Drug Enforcement Agency saw them. Indeed, various Coast

---

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

Guard officers received them. Yet, no one took the steps necessary to preserve the tapes. The excuses that their custodians offer—that the requests were too broadly worded, that they were "too busy" to make certain that the tapes were preserved—are lame. The best we can say is that the United States Attorney has promised to prevent recurrences.

■ Nonetheless, we will not overturn defendants' convictions without *some* reason to believe that the tapes might materially have helped their case. Courts consistently have refused to impose sanctions when the government has destroyed evidence but the destruction did not prejudice the defendants. *United States v. Arra,* 630 F.2d 836 (1st Cir.1980) (Coast Guard tapes); *United States v. Bufalino,* 576 F.2d 446 (2d Cir.1978), *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978); *United States v. Picariello,* 568 F.2d 222 (1st Cir.1978); *United States v. Harrison,* 524 F.2d 421 (D.C.Cir. 1975); *see United States v. Bryant,* 439 F.2d at 653 (where there is bad faith, the appropriate sanction depends on "the importance of the evidence lost, and the evidence of guilt adduced at trial ...."); *cf. United States v. Pollock,* 417 F.Supp. 1332 (D.Mass.1976) (indictment dismissed where the government acted in bad faith and the lost evidence was material). And, we see no prejudice here unless the tapes might have provided evidence material to an issue in dispute.

■ Materiality is the rock upon which this appeal founders. Assuming as much as possible in defendants' favor, the tapes might show, contrary to other convincing evidence, that the British government did *not* consent to the search. Of course, this court decided this very question on the first appeal, *United States v. Green,* 671 F.2d at 50—at a time when the defendants might have asked us to infer from the destruction of the tapes that they would have shown lack of consent. *See, e.g., Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 217–18 (1st Cir.1982) (when evidence is destroyed, one may infer its contents were unfavorable to the posses-

sor); *Vick v. Texas Employment Commission,* 514 F.2d 734 (5th Cir.1975) (same); *International Union (UAW) v. NLRB,* 459 F.2d 1329, 1339 (D.C.Cir.1972) (same); 2 *Wigmore on Evidence* §§ 290–91 (Chadbourn rev. 1979). Despite the new "indictment dismissal" clothing of defendants' argument, we ordinarily would not reconsider this underlying factual holding, which is the "law of the case." *Eubank Heights Apartments Ltd. v. Lebow,* 669 F.2d 20 (1st Cir. 1982); *United States v. Roberts,* 650 F.2d 933 (8th Cir.1981) (suppression ruling), *cert. denied,* 454 U.S. 973, 102 S.Ct. 523, 70 L.Ed.2d 392 (1981). And, without a willingness on our part to reconsider that factual holding of "British consent," the tapes would seem irrelevant.

Regardless, even if the government's misconduct warrants reconsideration of the factual issue, under present law in this circuit the tapes still show too little. In *United States v. Hensel,* 699 F.2d 18 (1st Cir. 1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983), we specifically held that the Coast Guard's failure to obtain Honduras' consent to search a Honduran ship on the high seas did *not* require suppression of the evidence found. The purpose of international law's "consent" requirement is to protect nations, not individuals; and, if the nation does not care, the individual cannot raise "lack of consent" as a ground for suppression. *United States v. Hensel,* 699 F.2d at 29–30; *cf. United States v. Cadena,* 585 F.2d 1252, 1261 (5th Cir.1978) (of the possible remedies to a treaty violation, nothing requires "the granting of ... immunity from criminal prosecution"). Appellants argue that the crew may have a damage remedy for a "nonconsensual search" under Article 22 of the Convention on the High Seas. But again, in *Hensel,* we specifically held that even if there is such a private right, the result is the same. 699 F.2d at 30. Thus, under present law a finding of "no consent" could not have led to the suppression of the evidence in this case.

■ Appellants argue that the tapes might also have shown that the Coast Guard's registration-check was a pretext,

**4**

and that the officers' true motive was the hope of finding marijuana. The Supreme Court, however, has consistently rejected this type of "pretext" argument, most recently in *United States v. Villamonte-Marquez,* —— U.S. ——, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). The Court there explicitly stated that an otherwise lawful document search does not become unlawful because the officer might in fact have been looking for drugs, not documents. *Id.* at —— n. 3, 103 S.Ct. at 2577, *citing Scott v. United States,* 436 U.S. 128, 135–39, 98 S.Ct. 1717, 1722–1724, 56 L.Ed.2d 168 (1978); *see also United States v. Watson,* 678 F.2d 765, 769–71 (9th Cir.1982) (rejecting "pretext" argument in a Coast Guard document search), *cert. denied,* —— U.S. ——, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); *United States v. Hayes,* 653 F.2d 8, 12 (1st Cir.1981) (same); *United States v. Mazyak,* 650 F.2d 788, 790 (5th Cir.1981) (same); *United States v. Arra,* 630 F.2d at 845–46 (same); *United States v. Demanett,* 629 F.2d 862, 868–69 (3d Cir.1980) (same), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). There is no "special" feature of appellants' claim that might remove it from the ambit of these cases. Thus, even assuming that the tapes contain what the defendants claim, they could not have led to the suppression of evidence. Since they are not material to the case in any other way that we can see, they are not material to the court's finding of guilt. For this reason, the government's misconduct in destroying the tapes does not warrant dismissal of the indictment.

■ Appellants also claim that the court should have allowed them to use letters rogatory to question British officials about the search. *See* 28 U.S.C. § 1781. The object of the questioning, however, was to show that the British neither consented to the search nor asked the United States to check the ship's registration. But since this evidence would not help the appellants, we find no error in the court's denial of their motion. *See United States v. Bello,* 532 F.2d 422 (5th Cir.1976).

■ Finally, appellants ask us to reconsider our holding in *Green* that the Fourth Amendment permits the search of a ship

where government officials have only a "reasonable suspicion" of criminal activity, and not "probable cause." They apparently rely upon an exception to the "law of the case" doctrine, where a "controlling authority has since made a contrary decision of law applicable to [the] issue." *E.E.O.C. v. International Longshoremen's Association,* 623 F.2d 1054, 1058 (5th Cir.1980), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981); *see Delano v. Kitch,* 663 F.2d 990, 996 (10th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982). The short answer to their plea for reexamination, however, is that there has been no such change of law. The case they cite, *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), does not examine the question of whether probable cause is needed to search ships on the high seas; it simply concerns the scope of the warrant requirement in the search of a closed container in an automobile. And the recent Supreme Court holding that, unlike random stops of automobiles, stops of boats on an inland waterway do not require even "reasonable suspicion," tends to uphold the use of less than "probable cause" as a standard for high seas searches. *See United States v. Villamonte-Marquez, supra.*

*Affirmed.*