716 P.2d 1306
**Donald M. PARADIS,
Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 15867.

Supreme Court of Idaho.

March 25, 1986.

Rehearing Denied April 30, 1986.

William V. Brown and John P. Luster (argued), Coeur d'Alene, and Charles B. Lempesis, Post Falls, for petitioner-appellant. Edwin S. Matthews, Jr., New York City, appeared after argument and filed supplemental brief.

Jim Jones, Atty. Gen., and Lynn E. Thomas (argued), Sol. Gen., Boise, for respondent.

BISTLINE, Justice.

## HISTORY

Donald Paradis has been convicted of first degree murder and sentenced to death in the killing of Kimberly Ann Palmer. In *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1984), *cert. denied* — U.S. ——, 104 S.Ct. 3592, 82 L.Ed.2d 888, this Court affirmed the conviction and the sentence. The history behind the arrest and conviction of Paradis is adequately contained in our decision on Paradis' direct appeal and will not be repeated here.

On April 13, 1984, Paradis filed a petition for post-conviction relief. The state moved for summary judgment, which was granted by the district court on December 17, 1984. Paradis now appeals to this Court.

Essentially, Paradis argues that there are three areas wherein genuine issues of material fact exist, consequently making it improper for the district court to have granted the state's motion for summary judgment. These three areas are: (1) medical evidence available to counsel, but not used by him, revealed that the victim was killed in Washington and not Idaho, thereby precluding Idaho courts from exercising jurisdiction to try him; (2) the state unconstitutionally permitted the cremation of the victim's body without allowing the defense an opportunity to independently conduct its own examination; and (3) Paradis was denied effective assistance of counsel.

After this case was argued, additional counsel has appeared on behalf of Paradis and, with Court approval, has filed a supplemental brief, raising the additional challenges that the district court erred in denying a motion for a change of venue, and that prosecutorial misconduct prejudiced Paradis in the eyes of the jury. The state filed a responsive brief.

## I. STANDARD OF REVIEW

■ A petition for post-conviction relief is a special proceeding that is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); IDAHO CONST. art. 5, § 1. It is a proceeding entirely new and independent from the criminal action which led to the conviction. I.C. § 19–4901(b); *Bearshield, supra*, 104 Idaho at 678, 452 P.2d at 550. Thus, the Idaho Rules of Civil Procedure are applicable in such a proceeding. *State v. Goodrich*, 104 Idaho 469, 471, 660 P.2d 934, 936 (1983).

Under the Idaho Rules of Civil Procedure, a summary judgment is "only to be granted when all the facts contained in all the applicable pleadings, depositions, admissions, and affidavits have been construed most favorably to the nonmoving party, and it is clear that there is no genuine issue as to any material fact." *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900, 902 (1985); *Crowley v. Lafayette Life Ins. Co.*, 106 Idaho 818, 821, 683 P.2d 854, 857 (1984).

Idaho Code § 19–4906(b) and (c) deal with summary dispositions of a petition for post-conviction relief as follows:

(b) When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply within 20 days to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or, direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a material issue of fact.

(c) The court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

As our Court of Appeals stated in *Drapeau v. State*, 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct.App.1982):

[T]o justify an evidentiary hearing in a post-conviction relief proceeding, it is incumbent upon the applicant to tender a factual showing based upon evidence that would be admissible at the hearing. His application must be supported by written statements from witnesses who are able to give testimony themselves as to facts within their knowledge, or must be based upon otherwise verifiable information. Absent the witnesses or verifiability of the facts to which they could testify, we hold the application fails to raise material issues of fact sufficient to justify an evidentiary hearing.

Applying these rules to the facts of this case, we hold that the district court did not err in granting the state's motion for summary judgment.

## II. THE STANDARD APPLIED

### A. *Sufficiency of Jurisdictional Evidence.*

The essence of Paradis' first argument on this issue is that the evidence in this case is insufficient to prove that the victim was killed in Idaho, and that Idaho courts do not have jurisdiction in the matter. This argument was already decided by this Court on Paradis' direct appeal wherein this Court rejected Paradis' contention stating:

*[Paradis] also argues that the prosecution did not sufficiently prove beyond a reasonable doubt that the murder was committed in Kootenai County.* Appellant's reliance upon these arguments is misplaced since a defendant can be convicted solely on circumstantial evidence. *State v. Chapple*, 98 Idaho 475, 567 P.2d

20 (1977); *State v. Ponthier*, 92 Idaho 704, 449 P.2d 364 (1969). The state presented a strong circumstantial case against appellant. He was placed at or near the scene where the victim's body was found, in the company of a person, Larry Evans, who was almost certainly in or around the scene at the time of the murder (as indicated by the presence of his hat under Palmer's body). The area was sparsely populated, and very few people used the road where the van was found; thus, the presence of strangers in the area was conspicuous. Witnesses observed a van Palmer and Currier had been driving on that road shortly before three men, whose identities were established, including appellant, were observed leaving the area on foot. The presence of these men on foot left little doubt that they had reached the area in the van. In addition, strong evidence of motive was presented in that appellant was strongly linked, by evidence discovered in his house, to the death of Scott Currier. Currier's distinctive brass belt buckle, cut off his belt, was found at appellant's house. The belt was found on Currier's body. A lawn dart which was used to stab Currier in the back was found in appellant's house. Pieces of terry cloth identical to those used to tie Currier into the sleeping bag were found in appellant's house. There was evidence that an attempt was made to clean the house after Currier's death, as evidenced by the bloody rug hidden in the basement, with rags having been washed in a washing machine. An arson-caused fire had been set in appellant's house in an apparent attempt to destroy all of this evidence. There was a strong inference that appellant attempted to leave the area after the killings. Also, a blue blanket that had been in Currier's fiancee's van was found in appellant's car when he was arrested. *The circumstantial evidence presented in this case was more than sufficient to support the conviction of appellant for aiding and abetting the murder of Kimberly Palmer.*

*Paradis, supra,* 106 Idaho at 121, 676 P.2d at 35 (emphasis added).

■ A trial court need not consider anew in post-conviction proceedings issues previously raised and decided on direct appeal. I.C. § 19–4901(a)(4), in fact, only allows individuals to seek post-conviction relief who allege "that there exists evidence of material facts, *not previously presented and heard,* that requires vacation of the conviction or sentence in the interest of justice." (Emphasis added.) *See also Larsen v. May,* 93 Idaho 602, 606, 468 P.2d 866, 870 (1970); *Kraft v. State,* 100 Idaho 671, 674, 603 P.2d 1005, 1008 (1979) ("If [defendant] chooses to raise the issue on direct appeal and the matter is considered, it becomes *res judicata.*"). Accordingly, we will not review again Paradis' arguments that have already been fully considered and rejected in his direct appeal to this Court.

B. *Destruction of Exculpatory or Jurisdictional Evidence.*

Paradis' next argument is that the state violated his constitutional rights when it allowed the victim's body to be cremated two days after an autopsy had been performed but before the defense had been given an opportunity to independently examine the body. Paradis asserts that the autopsy performed was inadequate, and that a more complete one would have corroborated his claim that the victim was killed in Washington rather than Idaho. We disagree.

Paradis relies upon two United States Supreme Court decisions to support his argument. They are: *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We find both cases to be inapposite.

1. *The State's Duty to Disclose and Preserve Exculpatory Evidence— The Federal Rule.*

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Su-

preme Court held that due process requires the prosecution to disclose to the defense exculpatory evidence within its possession. Said the Court:

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87, 83 S.Ct. at 1196–97.

While announcing a new rule of law, the *Brady* decision created more questions than it answered. For example, it failed to delineate what constitutes "material" evidence. In addition, it failed to explain why a defendant's constitutional right on this matter should hinge upon whether a request for the evidence had been made. La-Fave and Israel, 2 *Criminal Procedure* § 19.5(b) p. 536 (1984). In *Agurs, supra,* the Court revisited *Brady* attempting to answer questions on these and other issues.

In *Agurs,* the defendant was convicted of the second degree murder of one James Sewell. Defendant's only defense was that of self-defense. The jury was unpersuaded, and took only 25 minutes to elect a foreman and return a verdict of guilty. *Id.,* 427 U.S. at 99–100, 96 S.Ct. at 2395–96.

Three months after the conviction, defense counsel moved for a new trial, alleging he had recently discovered that Sewell had a prior criminal record of violent crimes. Defense counsel argued that that evidence would have been admissible at trial to prove that Sewell had violent tendencies, which would have supported his client's argument of self-defense. Defense counsel also argued that the prosecution's failure to disclose this information violated the defendant's due process rights as set forth in *Brady.* The district court disa-

greed, and denied defendant's motion. *Id.* at 100–02, 96 S.Ct. at 2396–97.

The Supreme Court agreed with the trial court. The Court began by dividing up nondisclosure cases into three categories.[1] The first category is typified by the case of *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), in which "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *Agurs, supra,* 427 U.S. at 103, 96 S.Ct. at 2397. The Court's holding in *Mooney* and in subsequent cases applying *Mooney,*[2] is that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs, supra,* 427 U.S. at 103, 96 S.Ct. at 2397. This standard is a "strict standard of materiality not just because [these cases] involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process." *Id.* at 104, 96 S.Ct. at 2397.

The second category of cases is typified by the *Brady* case, in which the prosecution does not comply with a pretrial request for evidence. The Court noted that a *Brady*-type request puts a prosecutor on notice of what is specifically desired. Thus, the prosecutor should be well aware of what evidence will be of assistance, and such notice should correspondingly raise the level of the prosecution's duty to disclose. *Agurs, supra,* 427 U.S. at 106, 96 S.Ct. at 2399. Accordingly, the Court stated:

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, *if the subject matter of such*

---

1. The Court did acknowledge that each type of case does involve "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Id.* at 103, 96 S.Ct. at 2397.

2. *See Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Giglio v.*

*United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); *Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942).

*a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable. Id.* (emphasis added).

The third category of cases is typified by the *Agurs* case, itself, in which no specific request for the newly discovered and potentially exculpatory evidence was made by the defense. The Court stated that to have violated due process in these instances, the prosecution must have failed to disclose evidence that *"is so clearly supportive of a claim of innocence that it gives the prosecution notice of duty to produce ...." Id.* at 107, 96 S.Ct. at 2399. (emphasis added).

Thus, depending upon the factual setting of a case, a different set of standards will apply in determining whether the prosecution has violated a defendant's due process rights. The reason for delineating these cases is not so that new cases will be pigeonholed into one category and the applicable standard mechanically applied; rather, it is to highlight the fact that the different ways in which exculpatory evidence is not disclosed in turn requires appellate courts to employ different standards of review.

A separate line of cases involves the problem of alleged loss or destruction by the state of allegedly exculpatory evidence. These cases raise additional difficulties, such as that of deciding how materially favorable the evidence is to the defendant's case, and implementing an adequate remedy where justified. Usually, the only feasible remedy is dismissal of the prosecution or suppression of evidence that would have been impeached by the lost or destroyed evidence. *LaFave and Israel, supra,* § 19.5(h) p. 548. Accordingly, federal courts have treated these cases somewhat differently in their due process analysis. *Id.*

The leading case on this matter is *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). In *Augenblick,* the Supreme Court held that a defendant in a court martial trial was not denied due process when police lost tapes of their interviews with an important prosecution witness. *Id.* at 356, 89 S.Ct. at 533–34. The defendant claimed that the tapes might have revealed that the witness was illegally induced to testify against the defendant. *Id.* at 353–55, 89 S.Ct. at 532–33.

The Court held unanimously that in cases such as this one, due process is only violated where "the barriers and safeguards are so relaxed or forgotten ... that the proceeding is more a spectacle ... or trial by ordeal ..., than a disciplined contest." *Id.* at 356, 89 S.Ct. at 534 (citations omitted). In rejecting the defendant's claim, the Court noted that there was no suggestion that the tapes had been willfully suppressed, and that a good faith effort had been made to find them. *Id.* at 355, 89 S.Ct. at 533.

Applying *Augenblick,* *Brady,* and *Agurs,* a three-part test has been developed by courts in determining whether a defendant's due process rights have been violated by the loss or destruction of allegedly exculpatory evidence. The three factors to be considered are:

(1) whether the evidence was material to the question of guilt or the degree of punishment;

(2) whether the defendant was prejudiced by the loss or destruction of the evidence; and

(3) whether the government was acting in good faith when it destroyed or lost the evidence. *United States v. Arra,* 630 F.2d 836, 849 (1st Cir.1980); *see also United States v. Kincaid,* 712 F.2d 1, 3 (1st Cir.1983); *United States v. Quintana,* 673 F.2d 296, 299 (10th Cir. 1982), *cert. denied* 457 U.S. 1135 [102 S.Ct. 2963, 73 L.Ed.2d 1353] (1982).

*California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) is the latest case to discuss the state's responsibility for preserving evidence. In *Trom-*

*betta*, the Court held that due process does not require that law enforcement agencies preserve breath samples of suspected drunk drivers in order for the result of the breath-analysis tests to be administered in criminal prosecutions. *Id.*, 104 S.Ct. at 2535. The rationale, in part, was the court's conclusion that while the preserved samples might have been exculpatory, they are not of such materiality as to warrant constitutional protection and preservation. *Id.* at 2534.[3]

### 2. *The State's Duty to Disclose and Preserve Exculpatory Evidence— The State Rule.*

Idaho case law tracks closely the federal rule. In *State v. Owens*, 101 Idaho 632, 638, 619 P.2d 787, 793 (1980), the Court held that the state has a constitutional duty to disclose to a criminal defendant, upon request, exculpatory evidence. *See also State v. Harwood*, 94 Idaho 615, 617, 495 P.2d 160, 162 (1972) ("The suppression of ... exculpatory evidence by a prosecutor [is] a denial of due process."). This Court has explicitly stated that due process interests are only involved with evidence that is " 'favorable to the accused and is material either to guilt or punishment.' " *Owens, supra,* 101 Idaho at 638, 619 P.2d at 793, quoting *Moore v. Illinois,* 408 U.S. 786, 795, 92 S.Ct. 2562, 33 L.Ed.2d 708 (1972).

In *State v. Olsen*, 103 Idaho 278, 282, 647 P.2d 734, 738 (1982), the Court grounded the state's duty to disclose exculpatory evidence material to the preparation of his cases in both federal and state due process guarantees. We reiterate that holding, es-

pecially its reliance upon state constitutional guarantees.

The due process protection found in art. 1, § 13[4] of the Idaho Constitution, mandates, as a condition of fundamental fairness in the conducting of a criminal trial, that the prosecution must disclose to a defendant, upon appropriate request, evidence material either to guilt or to punishment. This rule is true "irrespective of the good faith or bad faith of the prosecution." *Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1197.

With respect to cases involving lost or destroyed evidence, a criminal defendant also is not without state due process protection. Whether a due process violation will be found to have occurred under art. 1, § 13 of the Idaho Constitution, will be dependent upon the type of balancing test employed by the *Arra* court and discussed above. *See, supra,* p. 1311. With federal and state rules kept in mind, we apply them to the facts of this case.

### 3. *The State Violated No Due Process Rights When It Allowed The Victim's Body to Be Cremated After Conducting an Autopsy on the Body—Applying a Destruction of Exculpatory Evidence Test.*

The facts here follow most closely those cases dealing with the loss or destruction of potentially exculpatory evidence. Thus, we apply the balancing test cited above and repeated here for convenience's sake:

(1) whether the evidence was material to the question of guilt[5] or the degree of punishment;

---

**3.** The court defined "materiality" as evidence which "must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

**4.** Article I, § 13 reads:
> **§ 13. Guaranties in criminal actions and due process of law.**—In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of wit-

nesses in his behalf, and to appear and defend in person and with counsel.
> No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law.

**5.** We wish to make clear that evidence of guilt includes evidence relating to defenses which *excuse* the defendant. This includes, for example, evidence relating to self-defense claims.

(2) whether the defendant was prejudiced by the loss or destruction of the evidence; and

(3) whether the government was acting in good faith when it destroyed or lost the evidence.

 With respect to the first factor, the evidence allegedly destroyed—the victim's body—is simply not exculpatory. The whole thrust of Paradis' argument is that a more complete autopsy might have provided evidence supporting his claim that the victim was killed in Washington, and therefore, that Idaho courts are without jurisdiction over the matter. Nowhere does Paradis argue, however, that a more complete autopsy would have produced evidence material to the question of Paradis' guilt or the degree of punishment. Evidence relating to *where* a person died bears no relation to *who* committed the murder; it is not exculpatory. Thus, because Paradis' argument does not allege the destruction of exculpatory evidence—that which involves his guilt or innocence for the crime committed—Paradis has failed the first test; the cremation of the body was not material to Paradis' guilt.

Leaving factor two for discussion below, we proceed to factor three. I.C. § 19–4301C directs that "[w]here a body is held for investigation or autopsy under this act the coroner shall, if requested by next of kin, release the body for funeral preparation not later than 24 hours after death or discovery of the body, whichever is later." Paradis makes no showing that the state was acting in bad faith when, pursuant to § 19–4301C, it released the victim's body to her family who subsequently chose to cremate her body. Paradis presents no evidence even raising a material fact issue with respect to the cremation of the victim's body. All was done in good faith and according to law. Thus, Paradis fails the third test.

The second test is reserved last for discussion because it implicates the most troubling issue for us to decide. To the extent that Paradis argues that the destroyed evidence prejudiced him in an exculpatory sense, he is incorrect, because, as stated above, the evidence does not relate at all to his guilt or innocence. Thus, Paradis fails to make out a due process claim for destruction of exculpatory evidence.[6]

---

**6.** Our conclusion is similar to that reached by the Tenth Circuit in *United States v. Baca,* 687 F.2d 1356 (10th Cir.1982). In *Baca,* the defendant, Joseph Baca, was convicted for possession of heroin with intent to distribute and for distribution of heroin, both in violation of 21 U.S.C. § 841(a). *Baca, supra,* 687 F.2d at 1358.

When Baca was arrested, the powder he was carrying was confiscated and sent to a police laboratory for analysis. The laboratory tests confirmed that the substance was heroin. The State of New Mexico brought charges against Baca, but dropped them six months later. After another six months, pursuant to a state court order, the heroin was destroyed by police. Soon thereafter, Baca was indicted, tried and convicted of the federal offenses. *Id.* at 1359.

Baca alleged in his appeal, among other things, that "his due process and *Brady, supra,* rights were violated because he was convicted without the powdery substance being introduced into evidence, and because he was not able to independently test the substance to determine whether it was heroin...." *Id.* at 1359 footnote omitted).

The court rejected Baca's arguments, stating in part:

The allegation is not properly founded on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194,

10 L.Ed.2d 215 (1963). *There is no showing that the destroyed powder would have been exculpatory or that the government suppressed the evidence.* See *United States v. Augenblick,* 393 U.S. 348, 355–56, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969); *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961); *United States v. Arra,* 630 F.2d 836, 848 (1st Cir.1980). Under the test discussed below the courts concentrate on both the fault of the government and the prejudice to a defendant when evidence is lost or destroyed. *Id.* at 1359, n. 1 (emphasis added).

The court went on to say:

This Court previously has held that absent bad faith or fraudulent purpose on the part of the government, the destruction of evidence prior to trial does not necessitate reversal of a criminal conviction. *Chandler v. United States,* 318 F.2d 356 (10th Cir.1963). When evidence has been lost or destroyed, courts engage in "a case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in the light of its nature, its bearing upon critical issues in the case and strength of the government's untainted proof." *United States v. Grammatikos,* 633 F.2d 1013, 1019–20 (2d Cir.1980); *accord United States v.*

542

Paradis claims, however, that the destroyed evidence might have corroborated his claim that the victim was killed several hours earlier, at a time when Paradis claimed he was in Washington. Accordingly, Paradis argues that the destroyed evidence prejudiced him in a jurisdictional sense. Thus, we are presented with the question of whether due process prohibits the state from destroying evidence relating to jurisdiction, and whether Paradis' rights were violated in this case. As discussed next, our conclusion is that Paradis' rights were not so violated.

4. *The State Violated No Due Process Rights When it Allowed The Victim's Body to Be Cremated After Conducting an Autopsy on the Body—Applying a Destruction of Jurisdictional Evidence Test.*

■ We hold that under the Fourteenth Amendment to the United States Constitution, and art. 1, § 13 of the Idaho Constitution, due process does prohibit a state from destroying jurisdictional evidence. Fundamental notions of fairness, which are the rock upon which due process is built, *Trombetta, supra,* 104 S.Ct. at 2532, demand such a holding.

The importance which Anglo-American jurisdictional principles place upon making sure that the *right* person is convicted, and in affording a criminal defendant a meaningful opportunity to present a complete defense, underlie the reason for the constitutional establishment of a rule against destroying exculpatory evidence. Equally important is the principle that a person cannot be tried by a court without jurisdiction to do so. *See, e.g.,* I.C. § 19–101 ("No

person can be punished for a public offense except upon a legal conviction in a court having jurisdiction thereof."); *State v. Chatmon,* 671 P.2d 531, 538 (Kan.1983); *Peoples v. State,* 523 P.2d 1123, 1125 (Okla. Crim.App.1974); *State v. Losolla,* 84 N.M. 151, 500 P.2d 436, 437 (App.1972); *Peterson v. Jacobson,* 2 Ariz.App. 593, 411 P.2d 31, 33 (1966); *State v. Clark,* 392 P.2d 539, 580 (Wyo.1964) ("Jurisdiction of the offense charged and of the person of the accused is a *fundamental and indispensable prerequisite to a prosecution.* In the absence of jurisdiction over both the offense and the person there is and can be no prosecution." (Emphasis added.)); *Dowell v. Maxwell,* 174 Ohio St. 289, 189 N.E.2d 95, 96 (1963); *Green v. State,* 230 Ind. 400, 103 N.E.2d 429, 430 (1952), *cert. denied* 343 U.S. 987, 72 S.Ct. 1084, 96 L.Ed. 1374 (1952).

In the words of the Supreme Court in *Trombetta, supra,* 104 S.Ct. at 2532, standards of fairness—due process—require that a criminal defendant "be afforded a meaningful opportunity to present a complete defense." Alleging lack of jurisdiction is one defense which may be presented. Accordingly, we hold that for the same reason that due process prohibits the destruction of exculpatory evidence, so, too, does it prohibit the destruction of jurisdictional evidence.

■ This does not mean, however, that Paradis' rights were necessarily violated, and, in this case, employing the test we set forth below, we hold that appellant's rights were not violated. The test we employ here is the same one we employed for analyzing the destruction of exculpatory evidence. *See, supra,* pp. 1311, 1312–13.

*Picariello,* 568 F.2d 222, 227 (1st Cir.1978); *United States v. Heiden,* 508 F.2d 898, 902 (9th Cir.1974).

. . . .

. . . Baca alleges he was prejudiced because he was not able to determine whether the Albuquerque Police Department had correctly concluded that the powder was heroin. *However, lack of independent verification alone is not enough to demonstrate prejudice.* If it were, the government would never be permitted to prosecute when key evidence is inad-

vertently lost, destroyed, or stolen. In the instant case, other evidence exists to support the claim that the substance was heroin.

. . . .

The Albuquerque police department expert who analyzed the powder testified regarding five standard tests he utilized to identify the substance as heroin. *Baca challenges the analyst's credentials and the accuracy of the testing process; but these issues go to credibility and were for the jury to consider. Id.* at 1359–60 (emphasis added).

The reason we use the same test is that the issues relating to destruction of exculpatory evidence and jurisdictional evidence implicate similar interests. We, therefore, turn to the test.

The first factor—the materiality of the destroyed evidence to jurisdiction—does not support Paradis. The cremated body says nothing directly as to *where* the crime occurred. In fact, the body would never have been introduced as evidence anyway. It was only the results of the autopsy on the body that were introduced as evidence in the case and which circumstantially support the state's view of where and how the victim was killed. A more complete autopsy, as Paradis argues he was entitled to conduct, would only at best have revealed that the victim died several hours earlier. This still says nothing about *where* the victim died; the evidence certainly would not have proven in any sense that the victim was killed in Washington. Thus, at best, a more complete autopsy would have produced circumstantial evidence of little probative value. Had the destroyed evidence been a videotape of the victim's death, showing where she died, or a taped interview of a witness stating where he or she saw the victim killed, our conclusion might have been different. But the evidence is not of that nature. In short, here, the jury would still have had to determine whose story to believe—Paradis' or the state's—even had a more allegedly complete autopsy been performed. The jury chose to believe the state, and the state's permitting the victim's body to be cremated did not materially affect that decision.

For similar reasons, we also hold that Paradis was not prejudiced by the victim's body being cremated. The alleged inadequacies of the autopsy were skillfully brought to light by Paradis' counsel in the cross-examination of the state's witness, who on direct examination had testified about results of the autopsy he performed. These inadequacies go toward the *weight*

of the evidence; they do not rise to the level of a due process violation. *Baca, supra,* 687 F.2d at 1360. Furthermore, Paradis' view of the evidence, and what allegedly happened, was fully presented. In summary, because the allegedly destroyed evidence is not material to jurisdiction, Paradis also is not prejudiced by its destruction.

Our reasoning above in discussing the cremation of the victim's body in an exculpatory context as it relates to factor three of our test, *see, supra,* part II.B.3., applies equally here. There is simply no evidence that the state acted in bad faith in any way in releasing the body to the victim's family. Accordingly, Paradis has failed to make out a due process violation by the state in releasing the body to the victim's family upon completion of the autopsy pursuant to I.C. § 19–4301C.[7]

## C. *Ineffective Assistance of Counsel.*

### 1. *Governing Standards.*

Paradis alleges that he was provided ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and art. 1, § 13 of the Idaho Constitution. We disagree.

In the companion case of *Gibson v. State,* 110 Idaho 631, 718 P.2d 283 (1986), we set forth the standard by which claims of ineffective assistance of counsel are to be judged. We pointed out that the federal standard " 'for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Gibson, supra,* at 634, 718 P.2d at 286, slip op. at 5, quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). For a defendant to prove this, he or she must satisfy two elements:

First, the defendant must show that counsel's performance was deficient.

---

**7.** We point out that the state turned the victim's body over to the victim's family, who in turn had her cremated long before any question as to

the propriety of the autopsy was raised, or any claim or request for an independent evaluation of the body was made.

This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland, supra,* 104 S.Ct. at 2064.

In *Gibson,* we noted that the state standard is substantially similar, *Gibson, supra,* at 635, 718 P.2d at 287, slip op. at 7, but did not need to decide if that is necessarily so, as we need not do so here. As in *Gibson,* we hold that Paradis has "failed to make a *prima facie* case that he was prejudiced in any way by the ineffectiveness he assigned to his trial counsel." *Id.* We also hold that Paradis' trial counsel clearly rendered reasonably effective assistance of counsel.

### 2. *Paradis Did Not Receive Ineffective Assistance of Counsel.*

Paradis claims that he received ineffective assistance of counsel in that his attorney failed: (1) to familiarize himself adequately with the crucial medical testimony presented by the state; (2) to effectively raise questions regarding the inadequate autopsy protocol; (3) to establish time and place of death; (4) to raise crucial questions of post-mortem lividity; (5) to obtain the body tissues of Palmer held by Dr. Brady, the doctor who performed the autopsy on the victim; (6) to produce Roger Peven as an impeaching witness to Dr. Brady's testimony; and (7) to call upon Paradis' Washington counsel despite his limited experience and their willingness to provide assistance. In addition, Paradis argues that his trial counsel had insufficient experience to defend him in that he had practiced for only six months prior to representing Paradis and had never previously participated in any major criminal defense case.

The first six errors Paradis alleges his trial counsel committed relate to the jurisdictional issue. Our review, however, confirms for us the fact that trial counsel did a superb job in litigating this issue. As the district court below accurately stated in deciding this issue, the trial counsel's efforts were "of the highest quality." R., Vol. 2, p. 146.

Trial counsel attended the preceding trial of *Gibson* and heard the testimony of the state's chief medical witness, Dr. Brady. Trial counsel obtained the assistance of Dr. Glenn Faith to assist him at the counsel table during the *Paradis* trial. Furthermore, with Dr. Faith's help, trial counsel obtained the services of Dr. Charles Larson, an imminently qualified forensic pathologist, to testify at trial on behalf of Paradis in impeaching Dr. Brady's methods of analysis and conclusions. The district court stated that trial counsel's cross-examination of Dr. Brady was "clear [and] cogent." R., Vol. 2, p. 146. We agree.

Trial counsel spent over 115 hours preparing for the trial. Nothing in the record shows that he was unaware of the relevant law or the facts of the case. In short, trial counsel did a commendable job. Nothing Paradis now argues trial counsel should have done objectively would have proven that the killing was done in Washington in a more effective manner than the course of conduct trial counsel chose to pursue. The jury simply chose to give more weight to the testimony of Dr. Brady than that of Dr. Larson. It is axiomatic, however, that an adverse verdict is not, in and of itself, indicative of ineffective assistance of counsel. The other two allegations of error—trial counsel's alleged inexperience and not contacting Washington counsel for assistance—are contradicted by the record; trial counsel performed commendably in a most serious and complex criminal case. Therefore, we hold that trial counsel rendered reasonable assistance as a matter of law.

In addition, as we point out in *Gibson*, numerous additional facts, *which were uncontroverted*, also support the state's view of events, and provided grounds independent from the medical testimony upon which the jury could have reasonably believed that the victim was killed in Idaho. *Gibson, supra*, at 636–637, 718 P.2d at 288–289, slip op., pp. 9–11. We hold, as we did in *Gibson*, that "since the steps [Paradis] now argues trial counsel should have taken would not have created a serious question of fact as to jurisdiction, [Paradis] was not prejudiced by their omission." *Id.* at 637, 718 P.2d at 289, 11. Thus, because *Paradis* also was not prejudiced to the extent that he was deprived of a "fair trial, a trial whose result is reliable," *Strickland, supra*, 104 S.Ct. at 2064, we reject his claim of ineffective assistance of counsel.

## D. *Change of Venue and Prosecutorial Misconduct.*

Paradis, in the supplemental brief above referred to, raises these issues: (1) whether the district court erred below in summarily rejecting his claim that he was prejudiced by the trial court's denial of his request for change of venue; (2) whether the district court erred in ruling that principles of *res judicata* preclude Paradis from arguing that the prosecutor, in prosecuting Paradis for the present crime, impermissibly relied upon circumstantial evidence of a crime for which Paradis had been previously acquitted, thereby violating constitutional provisions prohibiting the placing of a person in double jeopardy, Idaho Const. art. 1, § 13; Amend. 5 to the United States Constitution. *See also State v. Alanis*, 109 Idaho 884, 712 P.2d 585 (1985); and (3) whether statements made by the prosecutor in closing argument undermined the fairness of Paradis' trial.

Issue Nos. 1 and 3 were not raised in Paradis' direct appeal to this Court; issue no. 2 was. For the following reasons, we

decline to review any of these issues at this stage of post-conviction proceedings.

As the district court noted below, issue no. 2 was decided against Paradis on his direct appeal to this Court. *See Paradis, supra*, 106 Idaho at 122–24, 676 P.2d at 36–38. Thus, Paradis is precluded under principles of *res judicata*, *Kraft, supra*, 100 Idaho at 673–74, 603 P.2d at 1007–08, from raising this issue again in his post-conviction proceedings. *See also State v. Ruth*, 102 Idaho 638, 643, 637 P.2d 415, 420 (1981).

We likewise decline to review issues one and three because of the rule in Idaho that issues which could have and should have been raised on direct appeal will not be allowed to be raised in a post-conviction proceeding. *Watkins v. State*, 101 Idaho 758, 759–60, 620 P.2d 792, 793–94 (1980). This rule does not, however, preclude an individual from indirectly raising such issues in connection with a claim of ineffective assistance of counsel. That is not, however, the context in which Paradis has raised these issues today.[8]

The reason for this rule is that post-conviction proceedings "cannot be used as a substitute for appeal." *Id.* at 760, 620 P.2d at 794; *Dionne v. State*, 93 Idaho 235, 237, 459 P.2d 1017, 1019 (1969); *see also Ramseyer v. Ramseyer*, 98 Idaho 554, 556, 569 P.2d 358, 360 (1977) ("We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim *but also as to every matter which might or should have been litigated in the first suit.*" (Emphasis added.)) *Accord, Kraft, supra*, 100 Idaho at 673, 603 P.2d at 1007. Accordingly, we reject Paradis' arguments on these issues.

### III.

We affirm the district court's decision. Paradis has raised no genuine issues of

---

8. Though Paradis did not raise these issues in the context of his claim of ineffective assistance of counsel, we have considered them in that context, and find that they do not alter our holding that Paradis did not receive ineffective assistance of counsel.

material fact and the State of Idaho is entitled to judgment as a matter of law.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BAKES, J., concurs in the result.

### ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice.

My vote to deny Paradis' petition for rehearing, as with my authorship of the opinion for the Court, is not to be taken as a retreat from the views earlier expressed in dissent on Paradis' direct appeal to this Court. *See State v. Paradis,* 106 Idaho 117, 127, 676 P.2d 31, 41 (1984).