822 P.2d 572

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alvaro Irbe SOTO, Defendant–Appellant.**

No. 18886.

Court of Appeals of Idaho.

Dec. 2, 1991.

**54**

Fuller Law Offices, Jerome, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Alvaro Irbe Soto was charged with kidnapping a nine-year-old girl and assaulting her with the intent of committing a lewd and lascivious act. He entered an *Alford* plea to both charges pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). On appeal, he asserts that he received ineffective assistance of counsel[1] and that the court imposed an excessive sentence. For the following reasons, we affirm.

### Facts

Soto entered his guilty plea based on the following facts. At about 8:00 a.m. on a cold and snowy January 26, 1989, Soto was drunk and driving his truck. He saw a nine-year-old girl walking to school and asked her if she wanted a ride. When she said no and started running toward her school a mere two blocks away, Soto chased her, quickly heading her off, and pulled her into the truck. He then drove about six miles into the country, where he exposed his penis to her and pulled her panties off of one of her legs. She kicked and screamed until she was able to escape, but not before Soto hit her in the face, leaving a bruise that was still evident in a court proceeding two weeks later. The girl managed to run to a nearby house where she called her school for help. The police were notified. The girl was able to provide information for a composite drawing of Soto and to show detectives where the assault occurred. Although blowing snow had partially obscured the tire tracks, the girl was able to point out evidence that tended to corroborate her story. Soto was arrested at his home at about midnight on the day of the assault. Eventually the girl identified him in a line-up at the police station. Other people identified Soto's truck as the one they saw at the scene of the abduction the day of the incident.

Initially, Soto denied that the assault ever took place. However, when questioned between midnight and two a.m. on the night of his arrest, he told police that the girl had asked for a ride to school because of the storm, that the truck stalled when he stopped to get gas or at a stop sign, and that he was so drunk he became disoriented and could not find the school. He said that the girl got scared, started crying and jumped out of the truck. He claimed that at the time he had been on a three-week drinking binge and was emotionally traumatized because his wife had threatened to leave him.

After several pretrial hearings, Soto decided to enter his *Alford* plea. The court accepted the plea after determining that it was being made knowingly, intelligently, and voluntarily, and imposed the sentence. Soto appeals directly from his judgment and sentence. He has not moved to withdraw his plea nor has he filed a petition for post-conviction relief.

---

1. We note that Soto's counsel on appeal is different than his counsel below.

### Ineffective Assistance of Counsel

On appeal, Soto claims that his original counsel failed to: (1) pursue the defense of intoxication; (2) seek a continuance of the May 21, 1990, suppression hearing; (3) subpoena an interviewing police officer to appear at the May 21, 1990, suppression hearing; (4) subpoena Dr. Richard Smith, a psychologist, to appear at the suppression hearing; (5) contest Dr. Smith's examination of Soto; (6) move the court to conduct an I.C. § 18–212 fitness investigation of Soto; (7) present mitigating witnesses at the sentencing hearing; (8) have Soto examined for injuries he suffered in a beating by another inmate while in jail; (9) adequately prepare evidence in support of a motion for change of venue; (10) have Soto examined for competency before the May 21, 1990, suppression hearing; (11) provide Soto with an opportunity to confront his accusers by waiving the preliminary hearing after the victim testified; and (12) object to the fact that when the victim testified at the preliminary hearing the court allowed her parents to stand by her at the witness stand.

The standard for determining whether counsel's assistance was effective was enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and applied in Idaho in *Gibson v. State*, 110 Idaho 631, 718 P.2d 283 (1986):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Gibson v. State*, 110 Idaho 631, 634, 718 P.2d 283, 286 (1986), *quoting Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test enunciated in *Strickland* also applies to ineffective assistance of counsel claims that arise after entry of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Carter v. State*, 116 Idaho 468, 776 P.2d 830 (Ct.App.1989). The Court in *Hill* stated that

> The second, or "prejudice," requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial.

*Hill*, 474 U.S. at 59, 106 S.Ct. at 370. The defendant bears the burden of proving that his counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064; *Gibson*, 110 Idaho at 634, 718 P.2d at 286. The Court in *Strickland* stated that the appropriate test for prejudice requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Tactical decisions made by counsel will not be second-guessed on review, unless those decisions are made upon a basis of inadequate preparation, ignorance of relevant law, or other shortcomings that can be objectively evaluated. *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248

(Ct.App.1989). With these principles in mind, we will discuss Soto's contentions.

■■■ (1). *Withdrawing the motion to dismiss.* Initially, Soto's counsel raised the defense of intoxication in a motion to dismiss, stating that the evidence was insufficient to prove Soto's state of mind on the morning of the incident because he was intoxicated. Counsel withdrew the motion based on his reading of I.C. § 18–116, which states:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act.

I.C. § 18–116. The court clarified that intoxication would remain a defense and could be presented to the jury, but that counsel was merely withdrawing it from pretrial consideration.

Soto's charge of assault with intent to commit a lewd and lascivious act required the state to prove that he intended to commit the act. Intoxication may have affected his ability to form the intent. However, I.C. § 18–116 states that the issue is for the determination of the jury, not for the court in a pretrial ruling. Only the jury could determine what weight to give the allegation that Soto was drunk on the morning of the incident. Thus, counsel's withdrawal of the motion to dismiss was not only logical, but necessary. Further, given the language of the statute, the court would have had no choice but to deny the motion if it had not been withdrawn.

Next, Soto argues that any claim by counsel that he withdrew the defense and did not pursue it for tactical reasons is illusory because the defense was never presented to a jury, but was only used to try to defeat the state's claim that Soto voluntarily waived his Miranda rights the night he was arrested. The issue never went to a jury because Soto elected to submit an *Alford* plea to the charges. The district court determined that Soto was entering his plea knowingly, voluntarily and intelligently. The record is insufficient for this Court to determine whether counsel and Soto discussed the effect Soto's intoxication may have had on the issue of his intent. However, based on the record as it has been submitted, we conclude that there was no ineffective assistance of counsel on this issue. There was substantial evidence presented by the victim and the police that Soto attempted to sexually assault the victim. Counsel and Soto were aware of this evidence and Soto's alleged intoxication. Counsel's comments to the court when withdrawing intoxication from pre-trial consideration indicate that he knew the affect intoxication could have on Soto's intent. As discussed later in this opinion, counsel sought, by a variety of means, to ensure that Soto received a fair trial. Apparently, counsel and Soto agreed that a jury would be unreceptive to the idea that Soto's culpability would be any less because he had been drinking. Soto has not attempted to withdraw his guilty plea. Therefore, we conclude that there was no ineffective assistance of counsel on this claim.

(2). *Failure to seek a continuance of the May 21, 1990, suppression hearing to examine Soto's waiver-of-rights form.* Soto claims that at the hearing, the state presented his signed but previously unproduced waiver form and that he was prejudiced by this new information. The suppression hearing on May 21 was held to consider defense counsel's motions to suppress physical evidence, Soto's confession, an improper line-up, and the motion to dismiss. Counsel withdrew all of the motions except the motion to suppress Soto's confession. The state introduced the waiver form to show that Soto's confession was made voluntarily.

Soto claims that counsel failed to object to the admission of the evidence "despite a clear knowledge of Defendant's intoxication [and] tremendous cultural barriers in understanding American judicial procedures." He also asserts that counsel failed

to object to the fact that a copy of the waiver of rights form was sent to Dr. Richard Smith for Soto's I.C. § 18–211 evaluation and was integrated into the doctor's findings without counsel's knowledge. Unfortunately, Soto's argument is muddled. In his brief, he addresses the production of the waiver form, then switches midstream and argues that evidence of incriminating statements he made to Mr. Castenada, a Spanish speaking inmate who was recruited by Deputy Sayles to help with Soto's booking, had not been produced previously. In fact, a later hearing was held to determine the voluntary nature of Soto's statements to Castenada. However, the only discussion at the May 21st hearing concerned Soto's statements to Deputy Chapa and Detective Hutchinson when the defendant was arrested. Trial counsel argued that Soto's signing of the waiver form was not voluntary because of his fatigue, intoxication, and a coercive atmosphere. A similar argument was made regarding Soto's confessions.

The waiver of rights form was introduced to show that Soto was speaking voluntarily when he made incriminating statements to Detective Hutchinson and Deputy Chapa during interrogation. The record does not indicate whether the form had or had not been produced earlier in discovery. There are indications, however, that Soto is misreading the transcript. The prosecution stated at the hearing:

> When you read the report of Richard Smith, the psychologist, it refers to a statement made by Rod Sayles ... a Cassia County jailer. Mr. Sayles was booking the defendant. A prisoner named Hugo Castenada was translating for the jailer. When the jailer recognized that the conversation was exceeding his questions, the jailer asked Mr. Castenada what was being said, and that led to a second statement by this defendant, for whatever reasons, that didn't end up in Detective Hutchinson's case file.... when your secretary asked that we give information to Doctor Smith for his evaluation, Jailer Sayles' report was given back to [Dr.] Dick Smith. Nonetheless, it was never given to defense counsel. I have told defense counsel that Alan Smith would make all that available to them. If they want to file further motions, I would not contest them as untimely filings, because it is newly discovered evidence.

Based on this excerpt, it appears that the newly produced information was not Soto's waiver of rights form but Officer Sayles' report. Sayle's conversation with Soto appears to have occurred after Soto was questioned by Detective Hutchinson and Deputy Chapa. On May 31st, counsel moved to suppress Soto's statements to Sayles and Castenada and a separate hearing was conducted. If Sayles' report was new, then counsel had time to review it before the later hearing regarding its suppression.

■ **(3).** *Counsel's failure to subpoena Deputy Chapa to the May 21st suppression hearing.* Soto was arrested at about midnight on the day the victim was assaulted. Chapa interviewed him, in Spanish, between midnight and two a.m. At the hearing, the state submitted Deputy Chapa's affidavit, who was out of state at the time of the hearing, which stated that Chapa had read the warnings to Soto before he interviewed him, that Soto indicated he understood his rights, and that he did not request an attorney before or during the interview. At the hearing, Soto asserted the signing was not voluntary because he had requested an attorney, he was too tired to think clearly, he was drunk, and he did not understand what was happening because of language and cultural barriers between him and the officers. On appeal, he argues that he did not voluntarily sign the waiver form and that he was not given his Miranda warnings before he was interrogated, or if he was, he did not understand them.

Deputy Chapa was at a training school in Portland, which had been scheduled months in advance, on the day of the hearing. Defense counsel agreed with the state that Chapa would not be subpoenaed unless Chapa's testimony was deemed necessary after Soto presented his own evidence. At the hearing, the state presented Chapa's

affidavit and the testimony of Detective Hutchinson, who witnessed Chapa's reading of the Miranda rights to Soto before he was interrogated. Defense counsel relied on Soto's own testimony. The question we must ask is whether the failure to subpoena Deputy Chapa was prejudicial, in other words, what information could he have provided in person that he did not provide by affidavit. Essentially, he could provide no new information. His affidavit states that Soto knew his rights, acted voluntarily, and did not ask to stop the interview. He could describe whether he thought Soto was too drunk or tired, or unable to understand. However, this information was available in the videotape of the interrogation and the testimony of Detective Hutchinson, Deputy Sayles, the other attending officers, and inmate Castenada.

After the hearing, the court entered the following factual findings which we conclude are supported by the record: (1) Soto testified at the hearing that he was read his Miranda rights before questioning; (2) he did not testify that he requested an attorney and he knew before being interrogated that he had the right to remain silent; (3) the videotaped interrogation showed no drowsiness or intoxication, but that Soto was lucid; (4) Detective Hutchinson observed no physical signs that Soto was intoxicated and could not smell alcohol on his breath; (5) Officer Chapa read Soto his Miranda warnings in Spanish and questioned him in Spanish; (6) the videotape indicates that the defendant understood the questions asked by Chapa; (7) no physical force was used by the police to gain Soto's statements; (8) the interrogation lasted about one hour; (9) the police made no promises to Soto to obtain his statements; (10) Soto did not directly confess to the charges, but made statements implicating himself in the crimes.

The court concluded that based on the totality of the circumstances, the state proved that Soto voluntarily, knowingly and intelligently waived his Miranda rights, therefore, his statements were voluntary and admissible. We find the facts and conclusions to be supported by the record,

and that counsel's failure to subpoena Deputy Chapa was not prejudicial.

(4). *Failure to subpoena Dr. Richard Smith to the suppression hearing.* At the direction of the court, Dr. Smith conducted an I.C. § 18–211 examination of Soto to determine his fitness to proceed. The doctor's evaluation reported that, at the time of the interview, Soto was

> oriented in terms of person, time, place, and circumstances. Cognitive processes were grossly intact with nothing loose, tangential, or bizarre that would suggest the presence of a formal thought disorder. His responses typically were on target to my questions, albeit they were brief.

The doctor reported that Soto was very depressed and anxious about his circumstances, but stated:

> his cognitive processes are such to suggest that while the depression is evident, that, in and of itself, is not to the degree to preclude his being able to deal effectively with the issues at hand, i.e. the criminal charges against him.

The doctor stated that Soto was having trouble working aggressively with his attorneys because he seemed to perceive some cultural differences between him and his Caucasian attorneys, one of whom was fluent in Spanish. Dr. Smith wrote:

> The patient's capacity to communicate meaningfully with his counsel is obviously subjective and the problems that arise may not necessarily result from some type of mental condition. In my estimation, I feel there is a strong likelihood that there are communication difficulties between this patient and his attorneys that stem not from a mental disorder, but from cultural differences. While that is a significant issue, at least in my view, it does appear to be beyond the purview of this examination.

While Soto expressed some lack of understanding about the nature of the jury system, the doctor found that he did understand there would be a process by which he would be found guilty or innocent, that a judge and a prosecutor would be involved, although Soto was not sure of their exact

roles, and that there would be an effort to convict him of the charges.

Defense counsel was very concerned about the communication difficulties Soto presented and expressed such a concern to Dr. Smith. Dr. Smith questioned Soto and rendered his opinion, quoted above. Counsel stated several times during the suppression hearing that although Dr. Smith was not present, Soto wanted to be able to bring him before the court to testify about Soto's ability to participate at trial. Partly due to the doctor's report, Mr. Pena, an Hispanic attorney, was appointed as an adviser or intermediary between counsel and Soto.

The record indicates that counsel was aware of the value of Dr. Smith's observation that Soto was having trouble communicating with his attorneys. Counsel alerted the court to these problems and argued for further assistance. Any assertion that counsel was ineffective in this regard is without merit, and failure to subpoena the doctor for the hearing was not prejudicial.

(5 and 6). *Failure to contest Dr. Smith's examination of Soto and move for an I.C. § 18–212 examination.* Soto states that at the May 21st hearing both defense and prosecution "contested the findings of Dr. Smith's I.C. § 18–211 psychological report, by drawing the Defendant's fitness to proceed into question." The disagreement concerned whether the doctor's conclusion about Soto's difficulty communicating with his attorneys meant that Soto could not assist with his own defense. Defense counsel earlier addressed the problem by moving for substitution of counsel or for appointment of Hispanic co-counsel. The court appointed Mr. Pena as intermediary. Soto does not specify how Dr. Smith's evaluation was deficient or how further examination would change the fact that Soto apparently felt more comfortable with an Hispanic attorney. On appeal Soto produces no evidence to suggest he was unfit to stand trial—he merely reiterates the fact that he felt constrained when speaking with his Caucasian attorney. We conclude that the fact that counsel did not move for an I.C. § 18–212

examination was not prejudicial and that there was no ineffective assistance of counsel on this issue.

(7). *Mitigation witnesses.* Next, Soto argues that defense counsel should have had more witnesses testify at his sentencing hearing on his behalf to attempt to mitigate his sentence. Specifically, Soto argues that counsel should have called Dr. Smith to testify about alleged inconsistencies between the doctor's report and the presentence report concerning Soto's mental capacity. However, both reports were available to the court for its consideration at sentencing. Trial counsel called one witness, Soto's wife. Soto does not specify who else could or should have been called to testify, or what additional perspectives they could have given the proceedings.

> We cannot presume a denial of assistance of counsel without a basis for objective analysis of the attorney's performance. Bare assertions or speculations, unsupported by specific facts, are insufficient to establish ineffective assistance of counsel.

*State v. Kelling,* 108 Idaho 716, 720, 701 P.2d 664, 668 (Ct.App.1985).

(8). *Failure to have Soto examined for injuries due to a beating he received while incarcerated.* At the hearing for change of venue and psychological evaluation on April 12, 1990, defense counsel stated that Soto was

> experiencing some severe headaches of [sic] the injuries he suffered in the jail, and I believe the Court is familiar with that, and I will certainly request of the jailor to have a physical examination and that he be taken to a doctor.

There is no evidence in the record that Soto was or was not examined or given or denied treatment. He appears to argue that counsel's act of proceeding with several hearings in May, June and July, while the defendant was injured, "severely prejudiced Defendant's ability to comprehend the proceedings and to assist in an effective defense." However, Soto does not describe the extent of his injuries or specifically how they affected his ability to proceed, and the record is barren of references to his condition. He asserts that counsel

failed to seek medical treatment for his injuries, but counsel's statement to the court indicates otherwise. We cannot conclude prejudice from the evidence presented.

(9). *Failure to adequately prepare evidence in support of a motion for change of venue.* First, we note that a change of venue is requested so that a defendant may receive a fair trial before an impartial jury. Here, no jury was impaneled because Soto pled guilty. Ultimately, a change of venue served no purpose due to Soto's plea.

Second, we determine that counsel's performance was not deficient. At Soto's preliminary hearing on February 8, 1990, counsel moved for the hearing to be closed to the press because of the notoriety of the case and the adverse publicity that might come from having the hearing detailed in the media. Also, defense counsel moved to continue the hearing to enable Soto to gather evidence of adverse publicity. The court, in its discretion, denied the motions. Later, counsel moved for a change of venue outside of the fifth judicial district. Counsel supported the motion with an affidavit and several articles about the case from local newspapers. On April 12, 1990, the court partially granted the motion and changed venue from Cassia County to Minidoka County, still within the fifth judicial district. The judge noted the numerous newspaper articles he had seen, and commented that as a resident of Cassia County he was personally aware of the interest the community had in the case. He stated that the victim's elementary school was one of the largest elementary schools in the county. Because of that, many parents had expressed concern. Exercising its discretion, the court awarded Soto a partial victory. There is no evidence to suggest that counsel's preparation was inadequate, prejudicial, or precluded Soto from a total victory on his motion for change of venue.

(10). *Competency evaluation.* Soto asserts that counsel failed to have Soto examined for competency before the May 21st suppression hearing. The facts establish the contrary. Dr. Smith's psychological evaluation was conducted before the hearing and was judicially noticed and referred to several times during the hearing.

(11). *Confront accuser.* Soto argues that counsel failed to provide Soto with an opportunity to confront his accusers by waiving the preliminary hearing after the victim had testified. However, the record indicates that counsel waived further testimony in the preliminary hearing to avoid the adverse publicity the witnesses may have produced due to the court's refusal to close the hearing to the press. Instead, counsel opted to privately depose the witnesses. Contrary to Soto's position on appeal, we find that counsel attempted to prevent further prejudice to the defendant by waiving open testimony in the preliminary hearing.

(12). *Victim's testimony.* Soto argues that counsel failed to object to the fact that, when the victim testified at the preliminary hearing, the court allowed her parents to stand by her at the witness stand. Soto presents no argument and cites no authority on this issue. Therefore, we will not address it. *State v. Burris*, 101 Idaho 683, 619 P.2d 1136 (1980).

In *Strickland*, the United States Supreme Court articulated a rigorous test for showing prejudice when a claim of ineffective assistance of counsel is presented. We have previously stated that it is "a rare case where the burden could be satisfied on the record of a direct appeal as opposed to post-conviction relief." *Kelling*, 108 Idaho at 720, 701 P.2d at 668. Soto has not met his burden, therefore he is not entitled to relief on his claim.

### Sentences

Soto received a sentence on the second degree kidnapping charge of seven years fixed, followed by an indeterminate period of confinement of thirteen years. On the assault charge, he received a term of five years fixed, to be followed by an indeterminate period of five years. The sentences were ordered to be served concurrently, rather than consecutively. Soto claims the sentences are excessive and he should have been put on probation.

Sentencing is a matter left to the discretion of the trial court and a sentence within the limits prescribed by statute ordinarily will not be considered an abuse of discretion. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). However, a sentence may represent an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *Id.* A sentence is reasonable if it appears to accomplish the objective of protecting the good order of society and is imposed to achieve any or all of the related goals of deterrence, rehabilitation or retribution. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence of confinement that is longer than necessary to serve these goals is unreasonable. *Id.* When evaluating a sentence imposed under the Unified Sentencing Act, I.C. § 19–2513, the minimum fixed period generally will be treated as the probable measure of confinement for the purpose of sentence review. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). We are unable to speculate as to a possible longer term of confinement beyond the minimum term because the Commission on Pardons and Parole is vested with the discretion to grant or deny parole at any time after completion of the fixed term until the expiration of the maximum term. I.C. § 19–2513. *See State v. Bartlett*, 118 Idaho 722, 800 P.2d 118 (Ct.App.1990). Thus, we will treat Soto's probable term of confinement as seven years. When reviewing a sentence, we examine the facts in the record independently and focus on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Soto acknowledges that his sentence for kidnapping is within the statutory maximum of twenty-five years. *See* I.C. § 18–4504. Also, his sentence on the assault charge is within the statutory maximum of ten years. *See* I.C. § 18–910. The question then, is whether the court abused its discretion when it imposed the sentences.

The record shows that Soto did not have a criminal record, but had a fairly stable family and work history. The sentencing judge stated that "I am aware that the Defendant has no prior felonies.... So I have a defendant before me who, based on the record before the Court, is not a multiple offender or professional criminal." The transcript indicates that the court specifically referred to the terms of I.C. § 19–2521 when weighing whether to place Soto on probation or to incarcerate him. The court delineated the objectives of incarceration, and correctly noted that the primary consideration is the protection of society. See *State v. Robison*, 119 Idaho 890, 811 P.2d 500 (Ct.App.1991). The district judge stated:

> I think the primary responsibility I have as the sentencing judge in this community is to ... the community: however, the Court also must temper that responsibility by its legal obligations as well as the issue of fairness. When you talk about protection of society, however, that objective stands out very much to the Court in viewing the facts and circumstances surrounding this particular case.

The court found that, in response to the crimes of violence to which Soto pled guilty, the protection of society and young children was paramount in the court's duty. The court recognized an obligation to deter Soto from committing the act again and to make him understand the seriousness of the offenses. The court also considered deterrence of others when imposing the sentences. When considering Soto's chances for rehabilitation, the judge stated that after a suitable period of incarceration, "it would at least be my hope that he would be rehabilitated."

Although the court did not articulate many of the qualities of the defendant in relation to specific sentencing goals in this case, we infer from the court's discussion of those goals that it did actively consider Soto's personal qualities. The court imposed concurrent sentences within statutory boundaries. It discussed the appropriate sentencing goals. The decision to incarcerate Soto rather than place him on

probation was a decision left for the court's discretion. *State v. Lee*, 117 Idaho 203, 786 P.2d 594 (Ct.App.1990). The court agreed with the presentence investigator that Soto needed to be incarcerated to protect society. We conclude that the sentences do not constitute an abuse of discretion.

For the foregoing reasons, we affirm the judgment of conviction and sentences.

SWANSTROM and SILAK, JJ., concur.