819 P.2d 1159

**Robert GONZALES, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 18579.

Court of Appeals of Idaho.

Nov. 1, 1991.

Scott E. Axline, Blackfoot, for petitioner-appellant.

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Jack B. Haycock, Deputy Atty. Gen. (argued), Boise, for respondent.

WINMILL, Judge, pro tem.

This appeal arises from the district court's summary dismissal of Robert Gonzales' petition for post-conviction relief. In that petition Gonzales asserted he should have been allowed to withdraw his guilty plea to grand theft because, among other reasons, his primary language is Spanish and he did not fully understand the proceedings conducted in English. We uphold the dismissal of several of his claims because they were improperly raised. However, we vacate the summary dismissal of the petition in part, concluding that an evidentiary hearing should have been held to determine whether Gonzales understood the nature and consequences of his plea.

## Facts

Gonzales was arrested while driving a car that had been reported stolen. He pled guilty to a charge of grand theft, although he maintained that he bought the car from a friend named Eduardo. Gonzales' native language is Spanish; he speaks only broken English. At his arraignment for plea before Judge Beebe on July 7, 1986, Mr. David Parmenter, Esq., was sworn as an interpreter. The arraignment was continued until July 8, at which time Mr. Rudy Sanchez was sworn as interpreter. Mr. Sanchez also acted as the interpreter at the hearing on August 11, 1986, which was also continued. At the final sentencing hearing on September 4, Gloria Swainston was sworn to serve as interpreter. At all times, Gonzales was represented by his attorney, Mr. Thomas Packer.

During the proceedings, Judge Beebe concluded that Gonzales knew the nature of the charge and what the state would have to prove to convict him. After inquiring of the defendant, the court determined that he was entering his plea knowingly, intelligently, and voluntarily. Judge Beebe accepted the guilty plea. On September 4, 1986, the court imposed an indeterminate sentence not to exceed seven years.

Gonzales did not directly appeal from those proceedings. However, on March 8, 1989, he filed a petition for post-conviction relief. He asserted that he had received ineffective assistance of counsel and ineffective interpretations of the proceedings. He also argued that his sentence was excessive. In his affidavit supporting the petition, Gonzales claimed that he believed he was pleading guilty to the charge of receiving stolen property, not to grand theft. The affidavit also stated that Gonzales believed he could receive a maximum sentence of only three to four months in the county jail for his crime.

On September 5, 1989, the district court, Judge Herndon presiding, issued a memorandum decision summarily denying Gonzales' petition. Gonzales filed an objection. The court entered a second decision adhering to the first. After Gonzales submitted another affidavit supporting his petition, the court issued a supplemental decision again stating that it adhered to its original denial of the petition.

## Issues

On appeal, Gonzales argues that the district court erred when it dismissed his petition because it (1) did not require the transcript of the proceedings to contain the

Spanish discussions, translated into English, entered into by the interpreter and the defendant; (2) did not set aside the guilty plea; (3) denied his petition for post-conviction relief without a hearing; and (4) imposed a cruel and unusual sentence.

## Standard of Review

An application for post-conviction relief initiates a new and independent civil action under which the applicant bears the burden of proof. *Whitehawk v. State*, 116 Idaho 831, 833, 780 P.2d 153, 155 (Ct.App. 1989); *Clark v. State*, 92 Idaho 827, 452 P.2d 54 (1969). The court may grant a motion for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions and agreements of fact, together with any submitted affidavits, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.C. § 19–4906(c); *Ramirez v. State*, 113 Idaho 87, 741 P.2d 374 (Ct. App.1987). The issue on appeal from the dismissal of an application is whether the application alleges facts which if true would entitle the petitioner to relief. *Whitehawk, supra.; Noel v. State*, 113 Idaho 92, 741 P.2d 728 (Ct.App.1987). We turn then to the specific issues raised by Gonzales on appeal.

## The Trial Court Did Not Err in Refusing to Order A Spanish–English Transcript

Gonzales' first contention is that the court erred when it did not order or use a transcript of the arraignment with the Spanish conversations translated into English. We find no error.

The court reporter is charged with correctly reporting all oral proceedings had in the court and all testimony taken in all cases tried before the court. I.C. § 1–1103. Idaho Criminal Rule 12(g) requires that a verbatim record be made of all proceedings. Gonzales argues that the above requirements are not restricted to the English portion of a court's oral proceedings, but to every portion, including the Spanish conversations between the defendant and the interpreter. We disagree. Tradition and common sense tell us that "proceedings," when used to define what a court should require as part of the transcript, means the conversations between the judge and the parties, their counsel or their interpreter. We do not interpret I.C. § 1–1103 or I.C.R. 12(g) to require transcription of the conversations held at the defense table between the defendant and the interpreter or the defendant and his attorney. As the state argues, these discussions usually are spoken "sotto voce" and are not intended as communications for the court. Transcripts of proceedings usually indicate when such conversations take place by indicating that a discussion was held by the parties "off the record." At least one other court has noted that "there is an inherent difficulty in attempting to evaluate the accuracy of interpretations on appeal" because the transcript will contain only "the questions in English and the answers after they have been translated into English." *United States v. Anguloa*, 598 F.2d 1182, 1185 n. 3 (9th Cir.1979). The only alternative is to require every discussion held between the parties and their counsel or interpreter to be transcribed by a necessarily bilingual court reporter. We feel that such a requirement would be impracticable and would unduly interfere with well-established court procedures.

Also, in this case, we find that such a requirement would have been fruitless. Gonzales received the help of three different interpreters. At no time did he express concern about their qualifications or abilities. In several instances, the opposite appears to be true, as the following excerpt from the transcript reflects:

Court: Do you understand English, Mr. Gonzales?

Gonzales: Yeah.

Court: Mr. Gonzales, you're before the court for purposes of entering a plea to a Prosecuting Attorney's Information charging you with the crime of grand theft. Do you understand that?

Gonzales: Yeah.

The Court: You understand quite a bit of English, is that it?

Gonzales: Yeah. I understand some.

The Court: Well we should go about it this way; when you don't understand, why you let us know, and Mr. Parmenter—

Gonzales: I can ask him.

The Court: —will tell you. Pardon?

Gonzales: I can ask him.

The Court: You can ask him.

Gonzales: Yeah.

The Court: All right. You understand that unless you ask him, why we are to believe that you understand what I say.

Gonzales: Yeah.

The Court: You understand that?

Gonzales: Yeah, I understand.

Generally, the interpreters did not indicate that they had trouble communicating with the defendant. However, counsel for Gonzales does point out that at times Mr. Parmenter had trouble understanding Gonzales. The following exchange, concerning Gonzales' assertions that he had bought the car from a man named Eduardo, provides an example:

The Court: How much did you give Eduardo?

Gonzales: Five hundred dollar.

The Court: Five hundred dollars?

Gonzales: Yes.

The Court: You were at home and he came and awakened you and sold you the car?

(Off-the-record discussion was had between the defendant and Mr. Parmenter.)

Mr. Parmenter: I'm not catching the whole thing. But I think he's saying that Eduardo said something about getting papers from Salt Lake.

Gonzales argues that a transcription of every spoken word would provide a method of checking the accuracy of the translations and a way to determine if the interpreter and the defendant understood each other. He asserts that such a transcription would not be impracticable because proceedings in Idaho courtrooms are electronically recorded. The record indicates that such a transcript was initially ordered. However, it was not, or possibly could not, be produced. Although the transcript may have been helpful, we do not conclude that failure to provide it was erroneous.

■ Finally, Gonzales argues that the court's failure to provide a transcript containing the Spanish portions of his discussions with his interpreter results in his unconstitutional classification based on his race and national origin, thereby violating his constitutional right to due process and equal protection under the Idaho and U.S. Constitutions. This issue was not raised before the district court. Even so, a claim of fundamental error such as this may be reviewed on appeal. *State v. Bingham,* 116 Idaho 415, 422–23, 776 P.2d 424, 431–32 (1989). However, we find no merit in the argument. All proceedings in Idaho courts are transcribed the same way for all defendants. None of them contain the conversations held between a defendant and his counsel or interpreter when those conversations are not addressed to the court.

### The Court Erred in Summarily Dismissing the Petition

■ Even though we find no error in the court's decision not to require the requested transcript, we hold that the court erred when it summarily dismissed the petition.

The substance of Gonzales' petition is that he did not understand the nature of the proceedings and had critical misconceptions about the charges and possible punishment. He supported the complaint with his affidavit. The only evidence to contradict his position is the English transcript of the dialogue. The transcript suggests Gonzales understood some statements made by the judge, but misunderstood others. After recognizing that Gonzales could speak some English, Judge Beebe only told him to interrupt if he did not understand, so the interpreter could translate. On the surface, this appears to be reasonable. Who else could determine if Gonzales could understand, but Gonzales? Unfortunately, asking him to interrupt when he did not understand imposed an unfair burden on him, and may have placed him in a fool's paradise. Gonzales may have thought that he understood the proceedings when in fact he did not. A continual translation by the

interpreter may have solved the problem, but that translation was not made. In a situation such as this, then, we deem it preferable to place the affirmative duty on the court to determine that its statements are being understood. A summary disposition of a defendant's petition is tantamount to summary judgment under I.R.C.P. 56. *Ramirez, supra.* Construing the facts and making all reasonable inferences in a light that is most favorable to Gonzales, we hold that there remains a genuine issue as to whether he fully understood the proceedings and the nature and consequences of his plea. The facts he alleges, if true, would entitle him to relief. I.C. § 19–4906; *State v. Cobb,* 100 Idaho 116, 594 P.2d 154 (1979). *See also State v. Carrasco,* 117 Idaho 295, 787 P.2d 281 (1990). We therefore conclude that summary dismissal of Gonzales' petition was inappropriate, and that he is entitled to an evidentiary hearing on the question of whether he understood the nature of the charges against him and the maximum punishment which could be imposed. Of course, we express no view on the eventual outcome of that proceeding.

### Ineffective Assistance of Counsel and Interpreter

■ Gonzales asserted in his petition that his counsel rendered ineffective legal assistance because he did not adequately inform him of the nature of the crime to which he pled guilty, and its penalty. Judge Herndon found that counsel's assistance was effective and dismissed this claim. Gonzales also argued that his interpreters were ineffective. Judge Herndon found the opposite to be true and again dismissed the claim. The state addresses these claims in its appellate brief. However, Gonzales does not raise either issue on appeal. Therefore, we consider both issues to be waived and decline to address them. *See State v. Burris,* 101 Idaho 683, 619 P.2d 1136 (1980); *Voyles v. City of Nampa,* 97 Idaho 597, 548 P.2d 1217 (1976).

### Sentencing

■ Gonzales argues that the court did not address the appropriate sentencing goals when it imposed his seven-year sentence and that the sentence is cruel and unusual under the Idaho and U.S. Constitutions. Gonzales failed to raise this issue on direct appeal and, generally, post-conviction relief will not substitute for such an appeal. *Whitehawk, supra.* An issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless it appears to the court that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier. I.C. § 19–4901(b); *Whitehawk, supra.* However, to the extent an Eighth Amendment issue is raised, post-conviction proceedings are appropriate. *Whitehawk, supra.*

■ We hold that with due diligence, Gonzales' claim that his sentence is excessive could have been presented earlier in a direct appeal. Sentencing is a matter left to the discretion of the sentencing judge, and is not ordinarily appropriate for review in a post-conviction proceeding. *Ramirez, supra.* However, Gonzales also asserts that his seven-year indeterminate sentence is cruel and unusual because he is a first-time felon and the court did not consider his potential for rehabilitation or the factors described in I.C. § 19–2521. Gonzales' sentence is within the statutory maximum of fourteen years. *See* I.C. § 18–2408(2). Essentially, his argument is that his sentence is too long. An otherwise permissible sentence is not transformed into one that violates prohibitions against cruel and unusual punishment merely by denominating it as such. In this case, the court determined that Gonzales was lying and imposed the sentence to punish him for his crime and to protect society, both of which are appropriate sentencing goals. Furthermore, we interpret the judge's comments on Gonzales' itinerant lifestyle, lack of employment, and lack of connection to the area to reflect the court's concern that Gonzales would not be a good probation risk.

Also, we note that Gonzales committed his offense before the effective date of the unified sentencing act. Although no minimum period of confinement was imposed, we consider one-third of his seven year sentence, or two and one-third years, to be his probable term of confinement. *See State v. Lee,* 116 Idaho 38, 773 P.2d 655 (Ct.App.1988). Our review of the record indicates that the sentence is reasonable under the circumstances of this case.

## Conclusion

In summary, we hold that the district court acted properly when it summarily dismissed the majority of Gonzales' claims. However, summary dismissal was not appropriate in view of his assertions that he misunderstood critical components of the proceedings, such as the nature of the crime and its penalties. Summary dismissal was erroneous in this case because the court placed the burden on the defendant to speakup when he did not understand the statements made in English. This left the door open for misunderstandings by the defendant, in that he may have thought he understood when in fact he did not. Accordingly, the order of dismissal is affirmed in part and vacated in part and the cause is remanded to the district court with directions to conduct an evidentiary hearing on Gonzales' claim that he did not understand the nature and consequences of his guilty plea.

WALTERS, C.J., and SWANSTROM, J., concur.