187 P.3d 1253

**Eusebio NEVAREZ, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 33509.

Court of Appeals of Idaho.

April 30, 2008.

Review Denied July 8, 2008.

Eusebio Nevarez, Littlefield, Texas, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Eusebio Nevarez appeals from the order of the district court summarily dismissing his petition for post-conviction relief.

## I.

## FACTUAL & PROCEDURAL BACKGROUND

In the underlying criminal case, Nevarez pleaded guilty to two counts of conspiracy to traffic in methamphetamine, Idaho Code § 37–2732B(a)(4)(C) and (b). Prior to sentencing, he moved to withdraw his guilty plea. The district court denied the motion, a decision we affirmed in *State v. Nevarez*, Docket No. 29961, 142 Idaho 96, 123 P.3d 729 (Ct.App.2004) (unpublished).

Nevarez then filed a petition for post-conviction relief. In that petition, he raised three claims of ineffective assistance of counsel, arguing that counsel misrepresented the terms of the plea agreement, had a conflict of interest, and failed to preserve for appeal an alleged problem with the court interpreter. He also argued that his plea was not knowing, voluntary, or intelligent because of problems with the interpreter, and that the State breached the plea agreement. Counsel was appointed to represent Nevarez on these claims. The State filed a motion for summary dismissal and, after a hearing,[1] the district court summarily dismissed Nevarez's petition for post-conviction relief. Nevarez appeals.

## II.

## ANALYSIS

### A. Standard of Review

A post-conviction relief action is a civil proceeding in which the applicant bears the burden to prove the allegations upon which the request for relief is based. *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990); *Pierce v. State*, 109 Idaho 1018, 1019, 712 P.2d 719, 720 (Ct.App.1985). An order for summary disposition of a post-conviction relief application under I.C. § 19–4906(c) is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994). Therefore, summary dismissal of a post-conviction application is appropriate only if there exists no genuine issue of material fact which, if resolved in the applicant's favor, would entitle him to the requested relief. *Fairchild v. State*, 128 Idaho 311, 315, 912 P.2d 679, 683 (Ct.App.1996). If a genuine factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163

---

1. On August 10, 2006, the district court held a hearing on the State's motion to dismiss the post-conviction petition. Nevarez contends that despite his request that a transcript of this hearing be prepared for this appeal, he never received a copy. Nevarez apparently communicated this deficiency to the court reporter, who responded with a letter indicating that no transcript could be prepared because there was no record that a hearing was held. This matter was somehow resolved, however, because the transcript of the August 10, 2006 hearing is in the record on appeal.

(Ct.App.1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988). On review of a summary dismissal, we must examine the record to determine whether the trial court correctly found that there existed no genuine issue of material fact and that the State was entitled to judgment as a matter of law. *Id.* We liberally construe the facts and reasonable inferences in favor of the non-moving party. *Cowger v. State*, 132 Idaho 681, 684–85, 978 P.2d 241, 244–45 (Ct.App. 1999); *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993). However, we do not give evidentiary value to mere conclusory allegations that are unsupported by admissible evidence. *Phillips v. State*, 108 Idaho 405, 407, 700 P.2d 27, 29 (1985); *State v. Ayala*, 129 Idaho 911, 915, 935 P.2d 174, 178 (Ct.App.1996); *Roman*, 125 Idaho at 647, 873 P.2d at 901.

## B. Claim of Inadequate Interpretation

■ Two of Nevarez's claims hinge on his assertion that the court interpreter inadequately interpreted the proceedings. One is his claim that trial counsel deficiently performed because he failed to preserve the issue of this alleged inadequacy for appeal; the other is his assertion that his plea was not knowing, voluntary, or intelligent because of problems with the interpreter.[2] Nevarez was provided an interpreter to translate the proceedings into Spanish. In his affidavit in support of his petition, Nevarez stated that he has lived in the United States since 1970 and understands English in ordinary conversation, but that during the criminal proceedings the things that the judge and attorneys said did not make sense. He said that the interpreter only made it worse, and that the interpreter seemed confused. As evidence of the interpreter's difficulties, he pointed to the transcript of a hearing that occurred on July 29, 2003, in which Nevarez attempted to withdraw his plea. Nevarez's usual court-sworn interpreter, Mary Moberly, was at that hearing. Also at that hearing was an individual named Gina Vellasetin, who, ac-

cording to Nevarez's petition for post-conviction relief, was an interpreter provided by the Mexican Consulate. Nevarez had just explained to the district court that he had not understood what his attorneys meant when they said that he had "made a confession." The interpreter, presumably Moberly, then interrupted, apparently referring to Vellasetin:

> The Interpreter: May this Interpreter please take over?
>
> The Court: No, I can't have her do that. I'd like to, but I have to go with a Court sworn Interpreter. He can assist you with questions if you want.
>
> The Interpreter: I'm asking what confession he's talking about.
>
> The Court: Okay. And if he wants to clarify that with the two of them, that's fine. Just a minute. Only one at a time.

Nevarez speculates that Moberly's request that Vellasetin take over suggests that she was having some sort of difficulty in the interpretation.

■ To withstand a motion for summary dismissal, an applicant for post-conviction relief must present his supporting facts in the form of competent evidence that would be admissible at an evidentiary hearing. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986); *Roman*, 125 Idaho at 647, 873 P.2d at 901. That is, an application "must be supported by written statements from witnesses who are able to give testimony themselves as to facts within their knowledge, or must be based upon otherwise verifiable information." *Drapeau v. State*, 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct.App. 1982). A mere scintilla of evidence or only slight doubt is not sufficient to create a genuine issue of material fact. *Blickenstaff v. Clegg*, 140 Idaho 572, 577, 97 P.3d 439, 444 (2004).

Nevarez has not produced any evidence that Moberly's interpretation was actually

---

2. The State argues that this Court resolved the latter issue on direct appeal and that the matter is therefore res judicata. We need not address the State's assertion because, even assuming that Nevarez can bring the claim at this juncture, he has not made a prima facie showing that the interpreter inadequately translated the proceedings or that he was otherwise unable to understand what was said.

defective. His assertion that Moberly asked if Vellasetin could take over because Moberly was unable to interpret the proceedings properly is entirely speculative. Nevarez argues on appeal that the testimony of the interpreters could not be obtained without a subpoena and that he expressed to the district court a desire to subpoena them. It is true that Nevarez's petition for post-conviction relief asserted that subpoenas would be necessary to obtain the testimony of Moberly and/or Vellasetin. At the time of proceedings on the State's motion for summary dismissal, however, Nevarez was represented by counsel, and counsel did not seek to subpoena either of these witnesses. Nor did Nevarez present an affidavit from his defense attorney indicating that defense counsel detected any difficulty with the interpretation service or with Nevarez's ability to understand.[3]

Nevarez also argues that he raised a genuine issue of material fact in the same manner as the petitioner in *Gonzales*, 120 Idaho 759, 819 P.2d 1159. In that case, the defendant spoke Spanish but understood some English. Although an interpreter was present, the interpreter did not translate the entire proceedings. Instead, the judge instructed the defendant to inform the court if he did not understand something that was said, and the interpreter would then translate whatever had confused him. The defendant brought a post-conviction action, arguing that because an interpreter did not interpret all of the proceedings, he did not understand the nature of the proceedings or the consequences of his guilty plea. We agreed that the defendant had raised a genuine issue of material fact, saying that requiring the defendant to interrupt was an unfair burden because he may have thought that he understood the proceedings when in fact he did not.

In the present case, as in *Gonzales*, at the change of plea hearing, the district court said "Mr. Nevarez, if at any time you do not understand what the Court says, will you please advise me so that we can have the interpreter assist you?" Nevarez's situation is distinguishable from that in *Gonzales*, however, where the transcript suggested that the defendant understood some statements made by the judge, but misunderstood others. There is no such indication in this case. In his own affidavit, Nevarez asserted that he has been in the United States for more than thirty years and understands English in normal conversation. And unlike the situation in *Gonzales*, an interpreter translated for Nevarez throughout the hearing. The district court's questions to Nevarez at the change of plea hearing did not contain complex legal jargon, and Nevarez responded appropriately to the district court's inquiries, including questions requiring an explanation beyond merely "yes" or "no" answers. Under these circumstances, we cannot say that Nevarez has raised a genuine issue of material fact as to whether he understood the proceedings.

Because Nevarez has not provided more than a scintilla of evidence that Moberly inadequately interpreted the proceedings or that he did not understand them, we affirm the dismissal of his claim that counsel unreasonably failed to preserve the issue for appeal and his assertion that poor interpretation rendered his plea unknowing, involuntary, and unintelligent.

## C. Breach of the Plea Agreement

▆▆▆ Nevarez's petition for post-conviction relief also claimed that he is entitled to relief because the State breached the plea agreement. He correctly notes that a defendant is constitutionally entitled to relief when the State breaches a promise made to him in return for a plea of guilty, because when the prosecution breaches its promise, the defendant pleads guilty on a false premise. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *Berg v. State*, 131 Idaho 517, 519, 960 P.2d 738, 740 (1998). However, the record here shows that the State did not breach the plea agreement, and where essential elements of a post-conviction petitioner's claim are conclusively disproven by the record in the under-

---

**3.** Coincidentally, David N. Parmenter, the attorney who represented Nevarez at the change of plea hearing, has also served as a Spanish language interpreter in court proceedings. *See Gonzales*, 120 Idaho at 760, 819 P.2d at 1160.

lying criminal proceedings, summary dismissal is appropriate. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Cooper v. State*, 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975); *Remington v. State*, 127 Idaho 443, 446–47, 901 P.2d 1344, 1347–48 (Ct.App.1995).

On July 19, 2002, the State offered Nevarez an opportunity to plead guilty to three felony counts—conspiracy to violate the Uniform Controlled Substance Act, and two counts of trafficking in methamphetamine—and in exchange, the State would stipulate to concurrent sentences of twenty years with ten years determinate, would drop several charges against Nevarez, and would not prosecute his wife. The State indicated that this offer was available for one week. Nevarez rejected this offer and directed his attorney to "get a better deal."

Over nine months later, on May 6, 2003, Nevarez agreed to plead guilty to two counts of conspiracy to traffic in methamphetamine. The State recommended a unified term of life with ten years determinate, and continued to prosecute Nevarez's wife. Nevarez argues that this was a breach of a plea agreement, but the record establishes that when Nevarez ultimately pleaded guilty, the plea was not subject to the terms of the original offer that he had rejected. At the change of plea hearing, the attorney for Nevarez's son, who was being tried as a co-defendant in the same criminal matter, indicated the plea agreement as follows:

> [Attorney]: ... the Prosecutors have worked out a deal with Michael Nevarez and they've also worked out a deal with Eusebio Nevarez ...
>
> The Court: Has there been any agreement other than that the plea would be entered to the amended charge?
>
> [Attorney] No, Your Honor

The State then restated the agreement, saying, "We are agreeing that the sentencing can run concurrent between the counts. And other than that, we really don't—I don't think there is any other agreement. At sentencing, both sides can ask for what they want at sentencing." Nevarez's attorney then indicated his understanding of the agreement as follows:

The State has agreed to amend the Information and the charges to include [two counts of conspiracy to traffic in methamphetamine pursuant to I.C. § 37–2732B(a)(4)(B) and –2732B(b) ]. Basically, the agreement is the same as what was indicated in Michael Nevarez's case. The recommendation would be concurrent on those two charges and no agreement on sentencing and I don't believe there are any other agreements.

The court asked if Nevarez understood what his attorney had said; Nevarez said that he did. The record shows that Nevarez understood that he was pleading guilty to these crimes without any agreement that the State would recommend a certain sentence. There was no discussion about forbearance by the State for the benefit of Nevarez's wife. Upon this record, it is clear that the terms of original plea offer of July 19, 2002, were not a part of Nevarez's ultimate plea agreement, and thus there was no breach.

### D. Ineffective Assistance of Counsel

In addition to the claim that defense counsel was ineffective for failing to preserve the issue about the interpreter, which we addressed above, Nevarez also argues that defense counsel was ineffective because he misrepresented the terms of the plea agreement and because he had a conflict of interest.

 In order to prevail on an ineffective assistance of counsel claim, an applicant must demonstrate both that his attorney's performance was deficient, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App. 1989). To show deficient performance, a defendant must overcome the strong presumption that counsel's performance was adequate by demonstrating "that counsel's representation did not meet objective standards of competence." *Roman*, 125 Idaho at 648–49, 873 P.2d at 902–903. If a defendant succeeds in establishing that counsel's performance was

deficient, he must also prove the prejudice element by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. *See also Roman,* 125 Idaho at 649, 873 P.2d at 903. The standards articulated above, although more frequently applied to conduct at trial, have equal applicability to the entry of a guilty plea. Where, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Griffith v. State,* 121 Idaho 371, 373, 825 P.2d 94, 96 (Ct.App.1992). *See also Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *State v. Soto,* 121 Idaho 53, 55, 822 P.2d 572, 574 (Ct.App.1991). When it is asserted that a guilty plea was the product of ineffective assistance, to prove the prejudice prong the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Dunlap v. State,* 141 Idaho 50, 59, 106 P.3d 376, 385 (2004).

### 1. Argument that counsel misrepresented the terms of the plea agreement

■ Nevarez contends that counsel misrepresented the terms of the plea agreement because he informed Nevarez that he was likely to receive only a sentence of fifteen years with three years determinate. He notes that this was not only inconsistent with the actual plea agreement, but in contradiction of I.C. § 37–2732B(a)(4)(C), which sets a mandatory minimum sentence of ten years. He also argues that his attorney led him to believe that the State would dismiss the charges against his wife. As evidence that his attorney misled him, he presented his own affidavit and that of his son, asserting that the attorney had "guaranteed" a sentence of fifteen years with three years determinate. Nevarez also notes that he rejected the original plea offer, which had

better terms than the ultimate agreement. He contends that there was no rational reason why he would later take a worse plea agreement, and that he pleaded guilty only because his attorney had led him to believe that he had negotiated a better deal than was originally offered.

Nevarez's arguments are contradicted by the record. As noted above, at the change of plea hearing, counsel explained the terms of the plea agreement, and made no mention of the terms now claimed by Nevarez. Nevarez made no objection of counsel's characterization of the plea agreement, and indeed, indicated that this was his understanding. Furthermore, the district court explained the mandatory minimum sentence, saying:

> The sentence that the Court could impose there would require a minimum of ten years be served in the Idaho State Penitentiary, a maximum of life imprisonment could be imposed, a minimum fine of $25,000, a maximum fine of $100,000.

Nevarez said that he understood.[4] He also denied that he had been promised anything to induce his plea. At a hearing on Nevarez's motion to withdraw his plea, counsel described a conversation in which he had told Nevarez there was a possibility that they could circumvent the mandatory minimum sentence for conspiracy to traffic in methamphetamine if the law had changed in a certain manner. Ultimately, counsel determined that this legal argument was not viable. Counsel noted:

> In [Nevarez's] mind I think he feels that we had raised an issue and I felt it was an arguable issue, it was something that we needed to research, but I certainly explained that to him. I said this is something we need to research, there may or may not be something that we can argue. But basically the thought was there was a change in law after the alleged misconduct and the misconduct, if it would have happened prior to the change in statute, then we would have had an argument, but that's not really how it played out.

---

4. Nevarez contends that bad translation also interfered with his understanding at this hearing.

As noted above, he has presented no evidence of improper translation.

This conversation suggests not that counsel misled Nevarez, but merely that he had indicated the possibility that research might uncover a legal argument that would allow him to avoid the mandatory minimum sentence. Taken together, these proceedings contradict Nevarez's assertion that counsel guaranteed him a sentence of three-to-fifteen years and leniency for his wife.

Furthermore, even if counsel did misinform Nevarez about the mandatory minimum sentence, this erroneous advice was cured by the trial court's clear statements that the mandatory minimum sentence for trafficking would apply. Nevarez was specifically informed of the consequences of the plea that he said counsel had neglected to tell him, but proceeded with the plea all the same. Under these circumstances, Nevarez has made no viable showing of prejudice.

### 2. Argument that counsel had a conflict of interest

After the plea was entered but prior to sentencing, Nevarez attempted to withdraw his plea on the ground that his attorney had not properly informed him of the terms of the plea agreement. That same attorney represented him on this motion. He contends that counsel had an actual conflict of interest because the reason for withdrawing the plea was counsel's own failings. Nevarez argues that, pursuant to *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980), he need not show prejudice from his attorney's alleged conflict of interest.

Where the *Cuyler* standard applies, the *Strickland* prejudice standard need not be met, but a petitioner still must demonstrate that the conflict adversely affected his lawyer's performance. *Id.* at 348–49, 100 S.Ct. at 1718–19; *Beasley v. State,* 126 Idaho 356, 363, 883 P.2d 714, 721 (Ct.App.1994) (while there was a potential conflict of interest from the manner in which the attorney was selected and compensated, defendant had not shown any deficiency in his counsel's performance stemming from this). *See also State v. Wood,* 132 Idaho 88, 967 P.2d 702 (1998) (attorney's preparation of book and movie rights contract that attorney had no intention of signing did not adversely affect representation of defendant); *McCoy v. State,* 129 Idaho 70, 74–75, 921 P.2d 1194, 1198–99 (1996) (no showing that representing co-defendant was actual conflict that affected performance at sentencing when no indication that co-defendant would have been called as a rebuttal witness); *State v. Guzman,* 126 Idaho 368, 372, 883 P.2d 726, 730 (Ct.App. 1994) (no evidence that joint representation of co-defendant impaired attorney's performance when strategy that defendant suggested counsel should have pursued did not measurably differ from the defense actually presented); *State v. Koch,* 116 Idaho 571, 574, 777 P.2d 1244, 1247 (Ct.App.1989) (while defendant argued that counsel ignored possible defenses because of joint representation, record did not suggest representation was hindered). Nevarez argues that because of the conflict, his lawyer made a "lame" argument in support of Nevarez's motion to withdraw his guilty plea. However, we have held above that Nevarez had no meritorious ground for withdrawal of the plea, either due to breach of the plea agreement or due to counsel's alleged misrepresentation of the terms of the agreement, and Nevarez has not shown that there existed any stronger argument that could have been presented in support of his motion. In short, Nevarez has not shown that the alleged conflict of interest had an adverse effect on his lawyer's performance.

### III.

### CONCLUSION

Nevarez has not raised a genuine issue of material fact on any of his claims for post-conviction relief. We therefore affirm the dismissal of his petition.

Chief Judge GUTIERREZ and Judge PERRY concur.